42 A.3d 172 (2012)
425 N.J. Super. 463
STATE of New Jersey, Plaintiff-Appellant,
v.
Anthony ROSE, Defendant-Respondent.
Docket No. A-0192-11T2
Superior Court of New Jersey, Appellate Division.
Submitted April 16, 2012.
Decided May 3, 2012.
*173 Edward J. DeFazio, Hudson County Prosecutor, attorney for appellant (Devarup Rastogi, Assistant Prosecutor, on the brief).
Joseph E. Krakora, Public Defender, attorney for respondent (Joshua D. Sanders, Assistant Deputy Public Defender, of counsel and on the brief).
Jeffrey S. Chiesa, Attorney General, attorney for amicus curiae State of New Jersey (Daniel I. Bornstein, Deputy Attorney General, of counsel and on the brief).
Before Judges PARRILLO, ALVAREZ and SKILLMAN.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
We granted the State's motion for leave to appeal to decide whether the forfeiture by wrongdoing exception to the hearsay rule, N.J.R.E. 804(b)(9), applies retroactively to wrongdoing that occurred *174 before the new rule's effective date. We conclude that it does and that such application does not constitute an ex post facto violation.
Briefly, by way of background, defendant Anthony Rose was indicted for the June 8, 2009 murder of Dareus Burgess and related offenses. Prior to trial, the State moved to admit a statement by Willie Matthews implicating defendant in the victim's homicide. The application was made under N.J.R.E. 804(b)(9), which allows the admission of a witness's statement "against a party who has engaged, directly or indirectly, in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Apparently, Matthews had declined to testify after allegedly being confronted by members of defendant's family following defense discovery of Matthews' account. The trial judge denied the motion because the alleged wrongdoing predated the July 1, 2011 effective date of the rule, reasoning that the Legislature, by not enacting the new rule on the date of its adoption, September 15, 2010, evinced a clear intent that it not apply to conduct prior to its effective date.
We discern no such legislative intent from the adoption of N.J.R.E. 804(b)(9). The adoption of new evidence rules in this State is governed by the Evidence Act, 1960, N.J.S.A. 2A:84A-33 to -44, which provides two different paths, both requiring participation of all three branches of government. N.J.S.A. 2A:84A-34 to -39. One path allows for a Judicial Conference, which includes judges, lawyers and academics, to consider a draft of new evidence rules. N.J.S.A. 2A:84A-34. Upon its recommendation, and approval by the Supreme Court, the proposed new evidence rules would be announced "on September 15 next following such Judicial Conference[,]" and then filed with the Legislature and the Governor. N.J.S.A. 2A:84A-35. Unless rejected by a joint resolution "adopted by the Senate and General Assembly and signed by the Governor[,]" the proposed evidence rules "take effect on July 1 next following...." N.J.S.A. 2A:84A-36.
It is through this process that N.J.R.E. 804(b)(9) was adopted.[1] Contrary to the view expressed by the motion judge, there is no legislative intent to delay implementation of this new evidence rule. Indeed, the rule was drafted by the Supreme Court, not the Legislature, and approved by a Judicial Conference. The process, as noted, creates a built-in delay in implementationa statutorily mandated effective date that allows the Senate and General Assembly an opportunity to reject the new rule by joint resolution. See N.J.S.A. 2A:84A-36. To construe this delay mechanism otherwise, especially to shield those parties who employ intimidation before July 1, 2011, to procure the unavailability of witnesses who would otherwise testify against them, is simply mistaken.
Nothing in the language of the forfeiture-by-wrongdoing rule suggests it was intended to apply only to cases where the defendant's wrongdoing occurred after July 1, 2011. The note to the rule indicating its effective date contains no exceptions to its application to trials conducted thereafter. Were such exceptions anticipated, the rule, we submit, would have *175 clearly specified any time limitations on its applicability.
Finding some ill-defined legislative intent not to apply the rule retroactively also ignores well-settled principles that new rules relating only to modes of procedure and the conduct of trials, in which no one can be said to have a vested right, apply if they are in effect at time of trial, regardless of when the underlying crime was committed. State v. Nagle, 226 N.J.Super. 513, 516-17, 545 A.2d 182 (App. Div.1988). In other words, a trial is governed by the rules of evidence in existence at the time. State v. Kittrell, 279 N.J.Super. 225, 235 n. 3, 652 A.2d 732 (App.Div. 1995). Here, the forfeiture-by-wrongdoing rule is procedural in nature as it simply addresses the admissibility of evidence. As such, it applies to defendant's trial.
Defendant does not really contend otherwise. Rather, he argues that application of the rule violates the prohibition against ex post facto laws in the federal and state constitutions. U.S. Const. art. I, § 10, cl. 1; N.J. Const., art. IV, § 7, ¶ 3. We disagree.
Both the United States and New Jersey Constitutions forbid the legislative branch from passing ex post facto laws. The purpose of the prohibition "is to guarantee that criminal statutes `give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" State v. Muhammad, 145 N.J. 23, 56, 678 A.2d 164 (1996) (quoting Weaver v. Graham, 450 U.S. 24, 28-29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 23 (1981)). Thus, for a statute to violate the ex post facto ban, it "must either (1) punish as a crime an act previously committed, which was innocent when done; (2) make more burdensome the punishment for a crime, after its commission; or (3) deprive a defendant of any defense available according to the law at the time when the crime was committed." Muhammad, supra, 145 N.J. at 56, 678 A.2d 164. On the other hand, "`[t]here is no ex post facto violation ... if the change in the law is merely procedural and does not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" State v. Natale, 184 N.J. 458, 491, 878 A.2d 724 (2005) (quoting Miller v. Florida, 482 U.S. 423, 433, 107 S.Ct. 2446, 2452-53, 96 L.Ed.2d 351, 362 (1987)) (internal citations omitted).
"Ordinary rules of evidence ... do not violate the [Ex Post Facto] Clause." Carmell v. Texas, 529 U.S. 513, 533 n. 23, 120 S.Ct. 1620, 1633, 146 L.Ed.2d 577, 595 (2000); see also State v. Loftin, 157 N.J. 253, 442, 724 A.2d 129 (1999) (Handler, J., dissenting) (stating that a rule or statute that "merely alter[s] the scope of evidence admissible at trial" does not fall within the Ex Post Facto ban); Muhammad, supra, 145 N.J. at 56-57, 678 A.2d 164 (holding that allowing "the introduction of victim impact statements during sentencing" does not violate the state or federal prohibitions on ex post facto laws); State v. Erazo, 126 N.J. 112, 133-35, 594 A.2d 232 (1991) (holding that the introduction of evidence of a defendant's prior murder conviction at sentencing did not violate the ex post facto laws).
The Supreme Court in Carmell, supra, identified four types of laws that violate the Ex Post Facto clause:
1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters *176 the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

[Id. at 522, 120 S.Ct. at 1627, 146 L.Ed.2d at 588 (quoting Calder v. Bull, 3 Dall, 386, 3 U.S. 386, 390-91, ___ S.Ct. ___, ___, 1 L.Ed. 648, 650 (1798)) (emphasis in original).]
At issue both here and in Carmell, supra, is the fourth category of ex post facto laws. Unlike the present matter, however, the law in question in Carmell, supra, changed no "ordinary" rule of evidence and instead actually lowered the quantum of proof necessary to obtain a sexual offense conviction.
Carmell, supra, considered an amendment to a Texas statute that before September 1, 1993, provided that a prosecution for a sexual offense required a showing that (1) the victim informed another person of the alleged offense within six months of the offense, or (2) the victim's allegations were corroborated by other evidence, unless the victim was younger than 14 years old at the time of the offense. Id. at 517, 120 S.Ct. at 1624-25, 146 L.Ed.2d at 585. After the sex crimes for which defendant was charged were committed, but before his trial, the statute was amended to expand the child-victim exception to victims under eighteen years old, and therefore to include the young victim in Carmell, supra. Id. at 518-19, 120 S.Ct. at 1625, 146 L.Ed.2d at 586. Finding that application of the amended statute at the defendant's trial to incidents occurring before September 1, 1993, violated the ex post facto ban, ibid., because its practical effect was to lower the quantum of proof necessary to convict, id. at 530, 120 S.Ct. at 1631, 146 L.Ed.2d at 593, the Court explained:
Under the law in effect at the time the acts were committed, the prosecution's case was legally insufficient and petitioner was entitled to a judgment of acquittal, unless the State could produce both the victim's testimony and corroborative evidence. The amended law, however, changed the quantum of evidence necessary to sustain a conviction; under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence. Under the commonsense understanding of Calder's [Calder, supra, 3 U.S. 386, ___ S.Ct. ___, 1 L.Ed. 648] fourth category, Article 38.07 plainly fits. Requiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence is surely "less testimony required to convict" in any straightforward sense of those words.
[Ibid.]
In other words, "[t]he fact that the amendment authorizes a conviction on less evidence than previously required ... brings it squarely within the fourth category." Id. at 531, 120 S.Ct. at 1632, 146 L.Ed.2d at 593.
Carmell, however, did not impose an ex post facto ban on laws that simply allow for the admission of evidence. That is because
[r]ules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any given case. More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption. Therefore, to the extent one may consider changes to such laws as "unfair" or "unjust," they do not implicate the same kind of unfairness *177 implicated by changes in rules setting forth a sufficiency of the evidence standard. Moreover, while the principle of unfairness helps explain and shape the Clause's scope, it is not a doctrine unto itself, invalidating laws under the Ex Post Facto Clause by its own force. [Id. at 533 n. 23, 120 S.Ct. at 1633, 146 L.Ed.2d at 595 (emphasis in original, internal citations omitted).]
Indeed, Carmell "`was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes.'" 529 U.S. at 538, 120 S.Ct. at 1635, 146 L.Ed.2d at 597 (quoting Collins v. Youngblood, 497 U.S. 37, 43 n. 3, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990)).
Thus, there is a clear distinction, for ex post facto purposes, between a rule that simply relates to the mode or procedure in which facts constituting guilt may be placed before a jury and one that governs the sufficiency of those facts for meeting the requisite burden of proof. As to the latter, a change in the rules of evidence that lessens the amount, measure or degree of proof necessary to establish guilt than when the crime was committed clearly implicates the ex post facto inhibition. In contrast, a law that does nothing more than allow evidence of a particular kind in a criminal case that had been inadmissible at the time the crime was committed offends no constitutional principle of fairness or justness. There is, after all, a fundamental difference between a new rule that simply addresses the admissibility of evidence and one that changes the evidence necessary to convict.
We conclude that New Jersey's forfeiture-by-wrongdoing rules falls outside the fourth category of ex post facto laws identified in Carmell, and thus may be applied to all trials after its effective date regardless of when the underlying crime or wrongdoing by the defendant occurred. In rejecting an identical challenge to the federal forfeiture-by-wrongdoing rule[2] as defendant makes here, the Eighth Circuit Court of Appeals in United States v. Johnson, 495 F.3d 951 (8th Cir. 2007), cert. denied, 555 U.S. 828, 129 S.Ct. 32, 172 L.Ed.2d 46 (2008), found no ex post facto violation in the rule's retroactive application:
Johnson argues that the Ex Post Facto Clause of the Constitution precludes the application of the forfeiture by wrongdoing doctrine in her case because the rule of evidence codifying the doctrine, [Fed. R.Evid.] 804(b)(6), was enacted four years after the murders took place. The argument lacks merit because [Fed. R.Evid.] 804(b)(6) reflects legal principles that were well and widely recognized at the time of the murders.
. . . .
Moreover, even if the enactment of [Fed.R.Evid.] 804(b)(6) had enlarged the category of admissible evidence in a criminal case, we doubt that this would constitute an ex post facto violation. The Ex Post Facto Clause prohibits, inter alia, the application of any "law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender." Laws that "`simply enlarge the class of persons who may be competent to testify in criminal cases' do not offend the ex post facto *178 prohibition because they do not ... alter the degree or lessen the amount or measure of proof necessary to convict the defendant." Accordingly, even if the enactment of [Fed.R.Evid.] 804(b)(6) had enlarged the class of admissible hearsay, this expansion would not violate the Ex Post Facto Clause. We thus find unavailing Johnson's ex post facto objection to [Fed.R.Evid.] 804(b)(6).
[Id. at 970-71 (internal citations omitted).]
We agree with this rationale.
As in Johnson, supra, we perceive no unfairness or injustice in applying the rule to this matter. N.J.R.E. 804(b)(9) is evenhanded in its application because it applies to "any party who wrongfully procures the unavailability of a witness," whether that party is the defendant or the State. State v. Byrd, 198 N.J. 319, 350, 967 A.2d 285 (2009). It is also an "ordinary" rule of evidence, no different, retroactive-wise, than the victim-impact statute, N.J.S.A. 2C:11-3c(6), at issue in Muhammad, supra, 145 N.J. at 56-57, 678 A.2d 164; or the capital murder statute permitting consideration of a prior murder, N.J.S.A. 2C:11-3c(2)(f), involved in Erazo, supra, 126 N.J. at 133-35, 594 A.2d 232.
Moreover, our forfeiture-by-wrongdoing exception to the hearsay rule reflects long-standing legal and equitable principles that were well recognized at the time of the charged offenses. Indeed, although declining to adopt such a rule by judicial fiat, Byrd, supra, 198 N.J. at 334-49, 967 A.2d 285, the Court embraced the doctrine and urged its expeditious adoption by the Legislature. Id. at 349, 967 A.2d 285. And in her concurrence in Byrd, supra, Justice La Vecchia, citing extensively to the common law's long-standing recognition of the forfeiture-by-wrongdoing doctrine, believed that enactment of the hearsay exception need not precede a court's exercise of its inherent equitable powers to address "a defendant's wrongdoing that undermines the judicial system." Id. at 358, 369-70, 967 A.2d 285 (La Vecchia, J., concurring).
Most significant, the rule does not enhance the degree of the crime, eliminate an element of the offense, increase its punishment or lower the burden of proof required to convict a defendant at the time the crime was committed. It pertains solely to the admission of evidence at trial and in no way concerns whether such evidence is sufficient to overcome the presumption of innocence. As such, a defendant's substantial rights to have the State prove guilt beyond a reasonable doubt and for a jury to determine whether that burden has been satisfied remain undisturbed and unimpaired by enactment of the new rule. In fact, defendant can point to no vested interest in being tried by rules of evidence in effect at the time the crime was committed as opposed to time of trial, namely, in being tried without evidence of wrongdoing in the procurement of an adverse witness's unavailability, simply because the wrongdoing preceded the effective date of the rule.
For all these reasons, then, we conclude that N.J.R.E. 804(b)(9) may be applied retroactively to reach purported wrongdoing predating the rule's enactment. Our holding today, however, in no way suggests any view as to whether the evidence the State seeks to admit meets the criteria of the forfeiture-by-wrongdoing rule. That determination, of course, must await a N.J.R.E. 104(a) hearing, which we find the trial court wrongly denied the State.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] The other procedure permits the Supreme Court, at any time and without presentation to a Judicial Conference, to submit the proposed rules to the Senate and General Assembly, for their approval by joint resolution, and to the Governor for his signature. N.J.S.A. 2A:84A-38; see also State v. D.R., 109 N.J. 348, 375, 537 A.2d 667 (1988) (setting forth procedure).
[2] FED.R.EVID. 804(b)(6), which provides that the hearsay statement of a witness is admissible against a party if that party "wrongfully causedor acquiesced in wrongfully causing the declarant's unavailability as a witness and did so intending that result[,]" is practically identical to N.J.R.E. 804(b)(9).