SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Yolanda Terry and Teron Savoy** (A-71-12) (072775)

**Argued March 18, 2014 -- Decided July 22, 2014**

**RABNER, C.J., writing for a unanimous Court.**

The issue in this appeal is whether State intercepted phone conversations and text messages between a husband and wife, pursuant to a court-approved wiretap, are protected communications under the marital communications privilege. A second issue raised in this case is whether New Jersey should adopt a crime-fraud exception to the marital communications privilege.

At all times relevant to this case, defendants Teron Savoy and Yolanda Terry have been married. In the fall of 2010, the Ocean County Prosecutor's Office was investigating Savoy as the alleged leader of a drug trafficking network. As part of the investigation, the State obtained court orders under the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to -37 (Wiretap Act or Act) authorizing wiretaps of two cell phones Savoy used. Among many hours of interceptions, the State recorded two or three phone calls and intercepted five text messages between Savoy and Terry. In those communications, Savoy asked Terry to pick up money from co-defendant Chardel Holman. The State alleges that Savoy had previously fronted heroin to Holman. The State also alleges that on October 17, 2010, the police stopped a Lexus in which Savoy was a passenger. Authorities seized three bags of heroin, $900, and two other cell phones from Savoy. In an intercepted text message later in the day, Savoy asked Terry to retrieve something from the seized car. The following day, after getting a warrant, officials searched the Lexus and found twelve grams of heroin.

In June 2011, an Ocean County Grand Jury indicted Savoy, Terry, Holman, and twenty others on charges of conspiracy to manufacture, distribute, and possess with intent to distribute cocaine and heroin. Savoy is also charged with being a leader of a drug trafficking network and possession of heroin with intent to distribute. Savoy and Terry moved to prevent the State from introducing at trial the phone conversations and text messages between them, arguing that the communications were protected by the marital communications privilege, N.J.R.E. 509. In a detailed oral opinion, the trial judge denied the motion. The court found that the communications were admissible at trial because any confidential communication would be disclosed by a third party -- in this case, a law enforcement officer -- and not a spouse. The trial court also discussed the crime-fraud exception to the marital communications privilege, which many federal and state courts have adopted, and concluded that "any communication made in this case in furtherance of drug trafficking is [not] worthy of protection."

Defendants appealed. In a published opinion, the Appellate Division reversed. State v. Terry, 430 N.J. Super. 587 (App. Div. 2013). The panel determined that under Rule 509 and the Wiretap Act, the communications in question were protected. In addition, the panel noted that strong public policy concerns supported applying a crime-fraud exception to the marital communications privilege. The panel concluded, however, that it could not bypass the procedures of the Evidence Act of 1960, N.J.S.A. 2A:84A-33 to -44, and unilaterally adopt such an exception. The Supreme Court granted the State's motion for leave to appeal. 214 N.J. 233 (2013).

**HELD:** A confidential marital communication protected under the marital communications privilege does not lose its privileged status by virtue of a wiretap under the New Jersey Wiretapping and Electronic Surveillance Control Act. The Court, however, proposes a crime-fraud exception to the marital communications privilege and, pursuant to the Evidence Act of 1960, transmits it for approval by a joint resolution of the Legislature and for the Governor's signature.

1. The Legislature enacted the modern form of the marital communications privilege as part of the Evidence Act of 1960. The privilege also appears in Rule 509 of the Rules of Evidence. The privilege "stems from the strong public policy of encouraging free and uninhibited communication between spouses, and, consequently, of protecting the

sanctity and tranquility of marriage." State v. Szemple, 135 N.J. 406, 414 (1994). Outside the context of the Wiretap Act, the State's position that the marital communications privilege is personal to the spouses and does not prevent a third person from testifying, is correct. A marital communication loses its privileged character if it is overheard by a third party, such as a neighbor, "either accidentally or by eavesdropping." Terry, supra, 430 N.J. Super. at 597. However, the State's position, in effect, that wiretappers who act pursuant to a court order are no different from neighbors and other private eavesdroppers, is not supported by the language and history of the Wiretap Act. (pp. 7-10)

2. The Wiretap Act specifically provides that "[n]o otherwise privileged wire, electronic or oral communication intercepted in accordance with, or in violation of, the provisions of this act, shall lose its privileged character." N.J.S.A. 2A:156A-11 (last sentence of section 11). As applied to the marital communications privilege, the statute's plain language appears to mean that a confidential communication between two spouses, which would have remained privileged had there been no interception, does not lose its privileged status by virtue of a wiretap. But for the State's act of listening, pursuant to a wiretap order, the marital communication would have remained a private conversation between two spouses. The Act's history reveals that a state-authorized wiretap, unlike a private eavesdropper, does not destroy the privilege. The State's contrary approach would effectively read the last sentence of section 11 out of the Wiretap Act. Thus, the Court agrees with the Appellate Division that a confidential marital communication protected by Rule 509 "does not lose its privileged character because it is intercepted by a wiretap." Terry, supra, 430 N.J. Super. at 600. Section 11 of the Wiretap Act preserves the privilege. (pp. 10-17)

3. The Court agrees that the crime-fraud exception should apply to communications between spouses. The societal purpose behind the privilege is simply not served by safeguarding conversations between spouses about their joint criminal activities. The current version of Rule 509, in effect, immunizes conversations between spouses about their ongoing and future joint criminal behavior. Many courts, including all of the eleven federal circuits to consider the question, have recognized a crime-fraud exception to the privilege. The Appellate Division also catalogued multiple states that have adopted a crime-fraud exception by statute, rule, or case law. In addition, other evidentiary privileges in New Jersey -- including the physician-patient and cleric-penitent -- recognize a crime-fraud exception. The marital communications privilege should be updated to strike an appropriate balance between marital privacy and the public's interest in attaining justice. Specifically, Rule 509 should be amended to include a crime-fraud exception that is similar to the exceptions that apply in federal and state courts throughout the nation as well as other evidentiary rules in New Jersey. (pp. 17-20)

4. For relatively minor changes to the Rules of Evidence, the Court has historically acted on its own. By contrast, when a "fundamental change" with "serious and far-reaching" consequences is at stake, the Court should follow the procedures of the Evidence Act. State v. D.R., 109 N.J. 348, 352, 375-76 (1988). The Evidence Act reflects a "pragmatic compromise" among the branches of government and calls for the collaborative effort of all three to adopt significant changes to the Rules of Evidence. Id. at 352, 374-76. Adding a crime-fraud exception to the marital communications privilege would amount to a "fundamental change" with "serious and far-reaching" consequences. Id. at 352, 375-76. The Court therefore invokes the procedures of the Evidence Act and declines to adopt the change on its own. Pursuant to N.J.S.A. 2A:84A-38, the Court proposes a crime-fraud exception to the marital communications privilege at Appendix A, and transmits it for approval by a joint resolution of the Legislature and for the Governor's signature. More specifically, the marital communications privilege should not protect a communication that relates to an ongoing or future crime or fraud in which the spouses were joint participants at the time of the communication. If the Legislature and Governor approve a crime-fraud exception to Rule 509 before defendants' trial begins, and if the exception were found to be available in this case, it would then be up to the trial court to determine if the exception applies in light of the facts of this case. At this time, the Court does not opine on any constitutional ex post facto question. (pp. 20-27)

The judgment of the Appellate Division is **AFFIRMED**. In addition, the Court forwards to the Senate and General Assembly, for their approval by joint resolution, and to the Governor for his signature, a crime-fraud exception to the marital communications privilege.

**JUSTICES LaVECCHIA, ALBIN, PATTERSON and FERNANDEZ-VINA and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

YOLANDA TERRY and TERON
SAVOY,

    Defendants-Respondents.


        Argued March 18, 2014 – Decided July 22, 2014

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 430 N.J. Super. 587 (2013).

        William Kyle Meighan, Assistant Prosecutor,
        argued the cause for appellant (Joseph D.
        Coronato, Ocean County Prosecutor, attorney;
        Samuel J. Marzarella, Supervising Assistant
        Prosecutor, of counsel).

        Brian J. Di Stefano argued the cause for
        respondent Teron Savoy.

        John L. Brown, Jr., argued the cause for
        respondent Yolanda Terry.


    CHIEF JUSTICE RABNER delivered the opinion of the Court.

    As part of a criminal investigation, the State intercepted

phone conversations and text messages between a husband and

wife, pursuant to a court order. We must decide whether those

communications are protected under the marital communications

privilege.

1

Rule 509 of the Rules of Evidence embodies the State's longstanding marital communications privilege. The rule provides that "[n]o person shall disclose any communication made in confidence between such person and his or her spouse." N.J.R.E. 509. Underlying the privilege are the well-settled public policies to encourage spouses to share confidences and to protect marital harmony and privacy. However, if a bystander or some other private third party overhears a conversation between spouses, generally, the privilege is lost.

State investigators in this matter listened to and reviewed marital communications after they obtained a court order under the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 to -37 (Wiretap Act or Act). The language and history of the Act reveal that the Legislature intended to keep in place the policies that protect otherwise privileged communications between spouses. See N.J.S.A. 2A:156A-11. As a result, conversations between spouses that would otherwise be privileged cannot be intercepted or introduced in evidence under current law. We agree with and affirm the judgment of the Appellate Division in that regard.

This case raises a second issue as well. In its present form, Rule 509 protects communications between spouses about criminal activities they are jointly planning or committing. That aspect of the privilege does not serve its purpose and

2

undermines the public's interest in attaining justice.  We therefore propose a crime-fraud exception to the marital communications privilege, similar to the approach that eleven federal circuits and many states have adopted.

Because the proposed amendment presents a fundamental change to the Rules of Evidence with far-reaching consequences, we follow the procedures outlined in the Evidence Act of 1960: we submit a proposed crime-fraud exception -- set forth at Appendix A -- to the Senate and General Assembly, for their approval by joint resolution, and to the Governor for his signature.  See N.J.S.A. 2A:84A-38.

I.

The following facts are based on the State's proffer to the trial court and are not in dispute.  At all times relevant to this case, defendants Teron Savoy and Yolanda Terry have been married.  In the fall of 2010, the Ocean County Prosecutor's Office was investigating Savoy as the alleged leader of a drug trafficking network.  As part of the investigation, the State obtained court orders that authorized wiretaps of two cell phones Savoy used.  State v. Terry, 430 N.J. Super. 587, 590 (App. Div. 2013).

Among many hours of interceptions, the State recorded two or three phone calls and intercepted five text messages between Savoy and Terry.  Id. at 591.  In those communications, Savoy

3

asked Terry on October 17, 2010 to pick up money from co-defendant Chardel Holman.  The State alleges that Savoy had previously fronted heroin to Holman.  Id. at 590.

The State also alleges that on October 17, 2010, the police stopped a Lexus in which Savoy was a passenger.  Authorities seized three bags of heroin, $900, and two other cell phones from Savoy.  Ibid.  In an intercepted text message later in the day, Savoy asked Terry to retrieve something from the seized car.  The following day, after getting a warrant, officials searched the Lexus and found nearly twelve grams of heroin.  Ibid.

In June 2011, an Ocean County Grand Jury indicted Savoy, Terry, Holman, and twenty others.  The indictment charges them with conspiracy to manufacture, distribute, and possess with intent to distribute cocaine and heroin, contrary to N.J.S.A. 2C:5-2, 2C:35-5a, and 2C:35-5b(1).  Savoy is also charged with being a leader of a drug trafficking network, N.J.S.A. 2C:35-3, and possession of heroin with intent to distribute, N.J.S.A. 2C:35-5a(1) and 2C:35-5b(3).

Savoy and Terry moved to prevent the State from introducing at trial the phone conversations and text messages between them. They argued that the communications were protected by the marital communications privilege, N.J.R.E. 509.  In a detailed oral opinion, the trial judge denied the motion.  The court

4

found that the communications were admissible at trial because any confidential communication would be disclosed by a third party -- in this case, a law enforcement officer -- and not a spouse. The trial court also discussed the crime-fraud exception to the marital communications privilege, which many federal and state courts have adopted, and concluded that "any communication made in this case in furtherance of drug trafficking is [not] worthy of protection."

Defendants appealed. In a published opinion, the Appellate Division reversed. Terry, supra, 430 N.J. Super. at 610. The panel rejected defendants' claim that the State had to show a "special need" to wiretap Savoy's cell phones under N.J.S.A. 2A:156A-11. Id. at 593-95. That issue is not part of this appeal.

The panel also rejected the State's argument that the marital communications privilege did not apply. The Appellate Division reviewed Rule 509 and the Wiretap Act and concluded that the communications in question were protected. Id. at 596-600. Finally, the panel noted that strong public policy concerns supported applying a crime-fraud exception to the privilege. Id. at 602. The panel concluded, however, that it could not bypass the procedures of the Evidence Act of 1960, N.J.S.A. 2A:84A-33 to -44, and unilaterally adopt such an exception. Terry, supra, 430 N.J. Super. at 605-10.

5

We granted the State's motion for leave to appeal. 214 N.J. 233 (2013).

II.

The State argues that the marital communications privilege only prevents one spouse from disclosing confidential communications with the other. It contends that the privilege does not bar a third party from testifying "about statements overheard as a result of a valid wiretap order." The State maintains that certain language in the Wiretap Act -- "[n]o otherwise privileged . . . communication . . . shall lose its privileged character," N.J.S.A. 2A:156A-11 -- does not prevent an investigative agent from testifying about an intercepted communication.

Although the State submits that the marital communications privilege does not apply in this case, it argues that New Jersey should adopt a crime-fraud exception to the privilege for use in future cases.

Defendants submitted a joint supplemental brief in which they ask this Court to affirm the judgment of the Appellate Division. Defendants argue that the Wiretap Act expressly bars interception of privileged communications, like the confidential marital communications in this case.

Defendants also argue that New Jersey should not adopt a crime-fraud exception. If the Court decides otherwise,

6

defendants submit that it must follow the procedures in the Evidence Act. In any event, defendants contend that any exception should not apply to this case because the State has not proven that Terry was a participant in the alleged criminal activity.

III.

A.

We first address the State's argument that the privilege does not prevent the State from presenting evidence of confidential communications between spouses, which were intercepted under a wiretap order. The Appellate Division rejected that claim. We discuss the panel's ruling at length because we affirm substantially for the reasons contained in Judge Leone's thoughtful opinion.

The Legislature enacted the modern form of the marital communications privilege as part of the Evidence Act of 1960. See L. 1960, c. 52, § 22 (codified at N.J.S.A. 2A:84A-22). The privilege also appears in Rule 509 of the Rules of Evidence. The current version of the rule provides in part as follows:

> No person shall disclose any communication made in confidence between such person and his or her spouse unless both shall consent to the disclosure or unless the communication is relevant to an issue in an action between them or in a criminal action or proceeding in which either spouse consents to the disclosure, or in a criminal

7

action or proceeding coming within [Rule 501(2)].

[N.J.S.A. 2A:84A-22; N.J.R.E. 509.][1]

The marital communications privilege "stems from the strong public policy of encouraging free and uninhibited communication between spouses, and, consequently, of protecting the sanctity and tranquility of marriage." State v. Szemple, 135 N.J. 406, 414 (1994). The privilege has traditionally been viewed as "essential to the preservation of the marriage

---

[1] In addition to the marital communications privilege, New Jersey recognizes a spousal testimonial privilege, which provides that

> [t]he spouse or one partner in a civil union couple of the accused in a criminal action shall not testify in such action except to prove the fact of marriage or civil union unless (a) such spouse or partner consents, or (b) the accused is charged with an offense against the spouse or partner, a child of the accused or of the spouse or partner, or a child to whom the accused or the spouse or partner stands in the place of a parent, or (c) such spouse or partner is the complainant.

> [N.J.S.A. 2A:84A-17; N.J.R.E. 501(2).]

The spousal privilege applies only to criminal cases. Also, "[t]he spousal privilege, unlike the marital communications privilege, is not limited to confidential marital exchanges. Unless one of the exceptions applies, all testimony is barred except that bearing on the fact of the marriage." State v. Mauti, 208 N.J. 519, 534 (2012). In addition, the marital communications privilege continues to protect confidential communications made during the marriage even if the parties divorce, see id. at 533; N.J.R.E. 509; the spousal privilege ceases to apply once the marriage ends, State v. Mauti, 416 N.J. Super. 178, 193 (App. Div. 2010), aff'd, Mauti, supra, 208 N.J. 519; State v. Brown, 113 N.J. Super. 348, 353 (App. Div. 1971).

8

relationship." <u>Wolfle v. United States</u>, 291 <u>U.S.</u> 7, 14, 54 <u>S. Ct.</u> 279, 280, 78 <u>L. Ed.</u> 617, 620 (1934) (citations omitted). One prominent commentator advances another rationale for the privilege: "All of us have a feeling of indelicacy and want of decorum in prying into the secrets of husband and wife." <u>See</u> 1 <u>McCormick on Evidence</u> § 86 at 524 (Broun ed., 7th ed. 2013).

The State, relying on the language of <u>Rule</u> 509 and on <u>Szemple</u>, <u>supra</u>, 135 <u>N.J.</u> at 417, contends that the marital communications privilege is personal to the spouses and does not prevent a third person from testifying. Outside the context of the Wiretap Act, the State's position is correct; a marital communication loses its privileged character if it is overheard by a third party "either accidentally or by eavesdropping." <u>Terry</u>, <u>supra</u>, 430 <u>N.J. Super.</u> at 597 (citing <u>Szemple</u>, <u>supra</u>, 135 <u>N.J.</u> at 415 (quoting 1 <u>McCormick on Evidence</u> § 82 at 302-03 (John W. Strong ed., 4th ed. 1992))). The involvement of a third party, in essence, undermines the rule's requirement of confidentiality. <u>Ibid.</u> (citing <u>Szemple</u>, <u>supra</u>, 135 <u>N.J.</u> at 417). As a result, if a neighbor overhears a conversation, or a friend reads a letter from one spouse to another, those communications are no longer made in confidence, and neither spouse can invoke the privilege to prevent disclosure by the third party. <u>See</u> <u>Szemple</u>, <u>supra</u>, 135 <u>N.J.</u> at 416-20.

9

The State, in effect, argues that wiretappers who act pursuant to a court order are no different from neighbors and other private eavesdroppers. The language and history of the Wiretap Act, which guide our determination, reveal that the Legislature intended just the opposite.

B.

To give effect to the Legislature's intent, we begin with the words of the statute. L.A. v. N.J. Div. of Youth and Family Servs., 217 N.J. 311, 324 (2014) (citations omitted). The Wiretap Act specifically provides that "[n]o otherwise privileged wire, electronic or oral communication intercepted in accordance with, or in violation of, the provisions of this act, shall lose its privileged character." N.J.S.A. 2A:156A-11 (section 11). As applied to the marital communications privilege, the statute's plain language appears to mean that a confidential communication between two spouses, which would have remained privileged had there been no interception, does not lose its privileged status by virtue of a wiretap.

The State interprets section 11 differently. It argues that because the privilege is personal to spouses alone, and a third party may testify about an overheard conversation under Rule 509, an intercepted conversation recounted by an investigator is not "otherwise privileged" within the meaning of section 11. To the extent the text is ambiguous, we examine the

Act's history for further guidance.  State v. O'Driscoll, 215 N.J. 461, 474 (2013).

Several Senators introduced legislation in 1968, S. 943, 192 Leg. (Nov. 15, 1968), which was enacted as the Wiretap Act the following year, L. 1968, c. 409.  The Act outlined a process that law enforcement officers must abide by when they apply for a wiretap order.  State v. Ates, 217 N.J. 253, 266 (2014).

The last sentence of section 11 of the Act has been largely unchanged since the bill's introduction.  Once again, it provides that "[n]o otherwise privileged wire, electronic or oral communication intercepted in accordance with, or in violation of, the provisions of this act, shall lose its privileged character."  N.J.S.A. 2A:156A-11.  The Legislature inserted the word "electronic" in 1993.  L. 1993, c. 29, § 10. The remaining language in the sentence appeared in the original bill.  Compare L. 1968, c. 409, with N.J.S.A. 2A:156A-11.

The sponsors' statement to the Senate bill explained that it was modeled after two sources:  (a) the federal wiretap act, specifically Title III of the Omnibus Crime and Safe Streets Act, 18 U.S.C.A. §§ 2510-2520, which "established minimum standards for federal and state law enforcement officials to follow when seeking to intercept wire, oral, and electronic communications," Ates, supra, 217 N.J. at 266 (citing 18 U.S.C.A. § 2516(2)); and (b) a model state statute prepared by

11

Professor G. Robert Blakey of the University of Notre Dame Law School.  S. 943 (Sponsors' Statement), 192 Leg. (Nov. 15, 1968). We therefore look to both sources.

The last sentence of section 11 mirrored the following provision contained in Title III:  "No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character."  Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, Title III, 82 Stat. 197, 218 (codified as amended at 18 U.S.C.A. § 2517(4) (1968)).  The legislative history for section 2517(4) observed that

> [t]raditionally, the interest of truth in the administration of justice has been subordinated in the law to the interest of preserving privileged communications where four relationships have been involved: physician-patient, lawyer-client, clergyman-confidant, and husband-wife.  The scope and existence of these privileges varies from jurisdiction to jurisdiction.  The proposed provision is intended to vary the existing law only to the extent it provides that an otherwise privileged communication does not lose its privileged character because it is intercepted by a stranger.
>
> [S. Rep. No. 90-1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2189 (citations omitted); see also Terry, supra, 430 N.J. Super. at 598-99.]

The New Jersey Act also incorporated, "to a major extent," the model statute drafted by Professor Blakey.  See S. 943 (Sponsors' Statement), supra, at 13.  Professor Blakey testified

12

before the Senate Committee on Law, Public Safety, and Defense on September 16, 1968, and provided the Committee with an annotated copy of the model statute. Hearing on S. 897 before the S. Comm. on Law, Pub. Safety, & Def., 192d Leg. 28 (Sept. 16, 1968) (Statement of Prof. G. Robert Blakey). The model act appeared in a law review article that the Committee kept on file. Ibid. (citing G. Robert Blakey & James A. Hancock, A Proposed Electronic Surveillance Control Act, 43 Notre Dame L. Rev. 657 (1968)).

The last sentence of section 11 of the New Jersey Act is identical to the end of section 8(f) of the model statute: "No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this Act, shall lose its privileged character." Blakey & Hancock, supra, 43 Notre Dame L. Rev. at 675. Professor Blakey added a footnote to the end of that sentence, which states that

> [w]hile most jurisdictions today recognize one or more categories of privileged communications, they very often hold them inapplicable where an eavesdropper seeks to testify. Thus, the privilege is thought to be solely that of restricting the testimony of the spouse, confessor, lawyer, or doctor. The last sentence of this provision is designed to change that rule. Otherwise, the use of electronic surveillance techniques might indirectly undermine the various social policies represented by the various privileges.

13

> [Id. at 675 n.39 (emphasis added) (internal citation omitted).]

Professor Blakey's footnote responds directly to the State's argument and lays it to rest. As Professor Blakey anticipated, the State here argues that the marital privilege in Rule 509 is personal to the spouses but does not attach to the communication. Under that reasoning, a wiretapper, like a neighbor, would be free to repeat the communication. But, as Professor Blakey explains, "the last sentence is designed to change that rule." Ibid. "Otherwise," he writes, wiretapping could undermine the "social policies" underlying various privileges. Ibid.

Viewed in a different way, the footnote recognizes that but for the State's act of listening, pursuant to a wiretap order, the marital communication would have remained a private conversation between two spouses. If no one else had heard the conversation, the spouses could have chosen not to disclose it and ensured that it remained confidential -- consistent with the social policies the privilege is designed to protect. The last sentence of section 11, taken from the model act, demonstrates that the Legislature did not intend for the Wiretap Act to alter that outcome. The Act's history instead reveals that a state-authorized wiretap, unlike a private eavesdropper, does not destroy the privilege.

14

The State's contrary approach would therefore effectively read the last sentence of section 11 out of the Wiretap Act. As the Appellate Division observed, the State's position -- that a wiretap interception eliminates confidentiality -- would "render this key provision of N.J.S.A. 2A:156A-11 a nullity." Terry, supra, 430 N.J. Super. at 598 (citing Smith v. Dir., Div. of Taxation, 108 N.J. 19, 27 (1987) ("[I]t is well-established that a statute should not be construed in a manner that renders any portion of it a nullity.")); see also Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013).

We note, as the Appellate Division did, that Maryland's highest court reached the same conclusion when it interpreted similar statutory language. See Terry, supra, 430 N.J. Super. at 600 (citing State v. Mazzone, 648 A.2d 978, 983 (Md. 1994)). Under Maryland law, "[o]ne spouse is not competent to disclose any confidential communication between the spouses occurring during their marriage." Md. Code Ann., Cts. & Jud. Proc. § 9-105 (LexisNexis 2014). And like the New Jersey Act, the Maryland wiretapping statute provides that "[a]n otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this subtitle, does not lose its privileged character." Id. at § 10-407(d).

15

Relying on those provisions, defendant Mazzone moved to suppress the contents of two wiretap interceptions of conversations he had with his wife. Mazzone, supra, 336 Md. at 387. The Maryland Court of Appeals agreed with the defendant's position. It interpreted the language in the Maryland wiretap statute, which parallels section 11, "to preserve any privilege that would have existed had there been no interception and no eavesdropper." Id. at 389. The Court therefore "view[ed] the statute as preserving the marital communications privilege and prohibiting the court-authorized eavesdropper from testifying as to the contents of the communication." Id. at 389-90.

We are not aware of any case law in New Jersey that is directly on point. See Terry, supra, 430 N.J. Super. at 597. State v. Sidoti, 134 N.J. Super. 426 (App. Div. 1975), offers little guidance. Although in Sidoti the State introduced intercepted conversations between the defendant and his wife at trial, the defendant conceded that the conversations "did not contain confidential communications." Id. at 430. In addition, the Appellate Division observed that "the admission of these conversations, even if error, was harmless beyond a reasonable doubt." Id. at 431 (citations omitted).

For the reasons set forth above, we agree with the Appellate Division that a confidential marital communication protected by Rule 509 "does not lose its privileged character

16

because it is intercepted by a wiretap." Terry, supra, 430 N.J. Super. at 600. Section 11 of the Wiretap Act preserves the privilege.

## IV.

The State alternatively argues that the crime-fraud exception should apply to communications between spouses. We agree. Because that change would modify the Rules of Evidence in a significant way, we propose an amendment to be adopted in a manner consistent with the Evidence Act.

In general, courts construe privileges narrowly because they prevent factfinders from hearing relevant evidence and thus undermine the search for the truth. State v. J.G., 201 N.J. 369, 383 (2010) (citations omitted). Courts therefore accept privileges "only to the extent that they outweigh the public interest" in the need for full disclosure. Szemple, supra, 135 N.J. at 413-14 (citing Trammel v. United States, 445 U.S. 40, 100 S. Ct. 906, 912, 63 L. Ed. 2d 186, 195 (1980)). Because the marital communications privilege, like other privileges, "'has as its only effect the suppression of relevant evidence, its scope should be confined as narrowly as is consistent with the reasonable protection of marital communications.'" Szemple, supra, 135 N.J. at 415 (quoting 1 McCormick on Evidence § 82 at 303 (John W. Strong ed., 4th ed. 1992)).

17

The marital communications privilege is meant to encourage marital harmony, not to protect the planning or commission of crimes. The societal purpose behind the privilege is simply not served by safeguarding conversations between spouses about their joint criminal activities. See Fellerman v. Bradley, 99 N.J. 493, 503 (1985) (noting that purpose of attorney-client privilege is not met by its enforcement in crime-fraud context).

The current version of Rule 509, in effect, immunizes conversations between spouses about their ongoing and future joint criminal behavior. As the Appellate Division recognized, that course not only prevents evidence from being gathered and admitted, it can also "encourage . . . spousal involvement" in crime, "thwart law enforcement, and increase the risk to the public." Terry, supra, 430 N.J. Super. at 602. Those legitimate policy concerns outweigh any need to protect spousal communications about joint participation in crime.

For those and other reasons, many courts have recognized a crime-fraud exception to the privilege. All of the eleven federal circuits to consider the question have done so. See United States v. Evans, 966 F.2d 398, 401 (8th Cir.), cert. denied, 506 U.S. 988, 113 S. Ct. 502, 121 L. Ed. 2d 438 (1992); United States v. Marashi, 913 F.2d 724, 731 (9th Cir. 1990); United States v. Malekzadeh, 855 F.2d 1492, 1496 (11th Cir. 1988), cert. denied, 489 U.S. 1029, 109 S. Ct. 1163, 103 L. Ed.

18

2d 221 (1989); United States v. Estes, 793 F.2d 465, 466-68 (2d Cir. 1986); United States v. Picciandra, 788 F.2d 39, 43 (1st Cir.), cert. denied, 479 U.S. 847, 107 S. Ct. 166, 93 L. Ed. 2d 104 (1986); United States v. Sims, 755 F.2d 1239, 1243 (6th Cir.), cert. denied, 473 U.S. 907, 105 S. Ct. 3533, 87 L. Ed. 2d 656 (1985); United States v. Neal, 743 F.2d 1441, 1446-47 (10th Cir. 1984), cert. denied, 470 U.S. 1086, 105 S. Ct. 1848, 85 L. Ed. 2d 146 (1985); United States v. Broome, 732 F.2d 363, 365 (4th Cir.), cert. denied, 469 U.S. 855, 105 S. Ct. 181, 83 L. Ed. 2d 116 (1984); United States v. Ammar, 714 F.2d 238, 258 (3d Cir.), cert. denied, 464 U.S. 936, 104 S. Ct. 344, 78 L. Ed. 2d 311 (1983); United States v. Mendoza, 574 F.2d 1373, 1381 (5th Cir.), cert. denied, 439 U.S. 988, 99 S. Ct. 584, 58 L. Ed 661 (1978); United States v. Kahn, 471 F.2d 191, 194 (7th Cir. 1972), rev'd on other grounds, 415 U.S. 143, 94 S. Ct. 977, 39 L. Ed. 2d 225 (1974). The Appellate Division also catalogued multiple states that have adopted a crime-fraud exception by statute, rule, or case law. See Terry, supra, 430 N.J. Super. at 603 nn.16-18.

In addition, other evidentiary privileges in New Jersey recognize a crime-fraud exception. See N.J.R.E. 504(2)(a) (attorney-client privilege); N.J.R.E. 506(f) (physician-patient privilege); N.J.R.E. 511(2) (cleric-penitent privilege);

N.J.R.E. 514 (trade-secret privilege); N.J.R.E. 519(b)
(mediation privilege).

The adoption of the Rules of Evidence was not meant to "bar
the growth and development of the law of evidence to the end
that the truth may be ascertained and proceedings justly
determined." N.J.R.E. 102. With those aims in mind, we believe
that the marital communications privilege should be updated to
strike an appropriate balance between marital privacy and the
public's interest in attaining justice. Specifically, Rule 509
should be amended to include a crime-fraud exception that is
similar to the exceptions that apply in federal and state courts
throughout the nation as well as other evidentiary rules in New
Jersey.

V.

The question, then, is how to proceed. State v. Byrd, 198
N.J. 319 (2009), contains a comprehensive discussion of the
various options. We adhere to the principles summarized in that
opinion: "evidence rules that dramatically impact the conduct
of trials" should be adopted by way of the Evidence Act, "while
. . . evidence rule changes of lesser consequence" can "be
developed through case law." Id. at 345 (citations omitted).

For relatively minor changes to the Rules of Evidence, the
Court has historically acted on its own. In State v. Guenther,
181 N.J. 129 (2004), for example, the Court adopted a narrow

20

exception to Rule 608. In general, that rule bars the use of specific instances of conduct to attack a witness's character for truthfulness. N.J.R.E. 608(a). The limited exception the Court carved out in Guenther allows a defendant to impeach a witness's credibility by showing that the witness had made a prior false criminal accusation. Id. at 154; see also N.J.R.E. 608(b). That exception applies only when the credibility of a key witness "is the central issue in a criminal case." Id. at 160. The Court emphasized that it was "not creating a new rule of evidence, but merely carving out a narrow exception to the common law rule embodied in N.J.R.E. 608." Id. at 159.

By contrast, when a "fundamental change" with "serious and far-reaching" consequences is at stake, the Court should follow the procedures of the Evidence Act. State v. D.R., 109 N.J. 348, 352, 375-76 (1988). The Evidence Act reflects a "pragmatic compromise" among the branches of government and calls for the collaborative effort of all three to adopt significant changes to the Rules of Evidence. Id. at 352, 374-76.

The Evidence Act contains two different paths to adopt new evidence rules. Byrd, supra, 198 N.J. at 342. As Byrd outlines,

> [o]ne path allows for a Judicial Conference, which includes judges, lawyers, and academics, to consider a draft of new evidence rules. See N.J.S.A. 2A:84A-34. On recommendation of the Conference, and

21

approval by the Supreme Court, the proposed new evidence rules would be announced "on September 15 next following such Judicial Conference," and then filed with the Legislature and the Governor. See N.J.S.A. 2A:84A-35. Under that approach, unless rejected by a joint resolution "adopted by the Senate and General Assembly and signed by the Governor," the proposed evidence rules "take effect on July 1 next following." N.J.S.A. 2A:84A-36. . . .

The other path for the adoption of evidence rules permits the Supreme Court, at any time and without presentation to a Judicial Conference, to submit the proposed rules to the Senate and General Assembly, for their approval by joint resolution, and to the Governor for his signature. See N.J.S.A. 2A:84A-38; see also [D.R., supra, 109 N.J. at 375.]

[198 N.J. at 342-43.]

The Court has followed the Evidence Act "as a matter of comity" on a number of occasions. D.R., supra, 109 N.J. at 376. In D.R., the Court declined to adopt a "tender years" exception to the hearsay rule on its own. Id. at 375-76. Because of the "significant" nature of the change, and its "serious and far-reaching" consequences, the Court instead proposed an amendment to the Rules of Evidence and transmitted it to the Legislative and Executive Branches consistent with the Evidence Act. Id. at 351-52, 375-76. The current rule can be found at N.J.R.E. 803(c)(27).

In Byrd, supra, the Court likewise embraced a substantial change to the hearsay rules -- the adoption of a forfeiture-by-

22

wrongdoing exception -- and submitted the proposal to the Senate, General Assembly, and Governor for their review and approval. 198 N.J. at 325, 357. The Judiciary later convened a Judicial Conference, pursuant to N.J.S.A. 2A:84A-34, which proposed a draft rule. See State v. Rose, 425 N.J. Super. 463, 467 (App. Div. 2012). Because the Legislature and Governor did not reject the proposal, see ibid., it is now codified at N.J.R.E. 804(b)(9).

More recently, the Court concluded that there was "neither warrant nor right" for it "to engraft a new exception" onto the spousal testimonial privilege. Mauti, supra, 208 N.J. at 541 (emphasis added).

The type of amendment to the evidence rules proposed in this case is comparable to the modifications recommended in D.R. and Byrd. Adding a crime-fraud exception to the marital communications privilege would amount to a "fundamental change" with "serious and far-reaching" consequences. D.R., supra, 109 N.J. at 352, 375-76. We therefore invoke the procedures of the Evidence Act and decline to adopt the change on our own.[2] Pursuant to N.J.S.A. 2A:84A-38, we propose a crime-fraud

---

[2] The State conceded at oral argument before the Appellate Division, see Terry, supra, 430 N.J. Super. at 589, and in its motion for leave to appeal to this Court, that the Supreme Court should follow the Evidence Act and not proceed unilaterally to craft a crime-fraud exception. In a later supplemental filing, the State argued that the Court can act on its own. The State's brief did not offer a reason for its new position.

23

exception to the marital communications privilege at Appendix A, and transmit it for approval by a joint resolution of the Legislature and for the Governor's signature.  We first discuss the language of the proposed amendment.

## VI.

There are a number of sources to consider for a crime-fraud exception.  As noted earlier, many states and federal circuits have adopted one, and the New Jersey Rules of Evidence also contain various models.

Judge Weinstein, in his authoritative treatise on evidence, observed that most circuits have held that the government may present "testimony about confidential communications involving [i] future or ongoing crimes [ii] in which the spouses were joint participants [iii] at the time of the communications." Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Manual § 18.05 n.52 (Joseph M. McLaughlin ed., 2014).

Other privileges in the New Jersey rules address some of the same themes.  See N.J.R.E. 504(2)(a) (attorney-client privilege "shall not extend to a communication in the course of legal services sought or obtained in aid of the commission of a crime or a fraud"); N.J.R.E. 506(f) (no physician-patient privilege if "judge finds that . . . the services of the physician were sought or obtained to enable or aid anyone to commit or to plan to commit a crime or a tort, or to escape

24

detection or apprehension after the commission of a crime or a tort"); N.J.R.E. 511(2) (permitting cleric to waive cleric-penitent privilege if "the privileged communication pertains to a future criminal act"); N.J.R.E. 514 ("The owner of a trade secret has a privilege . . . to refuse to disclose the secret . . . if the judge finds that the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."); N.J.R.E. 519(b) (no mediation privilege if someone "intentionally uses a mediation to plan, attempt to commit or commit a crime, or to conceal an ongoing crime or ongoing criminal activity").

Judge Weinstein's formulation effectively balances the relevant interests. It promotes the purposes of the privilege: to encourage the sharing of confidences between spouses and protect marital harmony and privacy. See Weinstein & Berger, supra, § 18.05 n.35-37. At the same time, it roots out communications between spouses who are both involved in criminal activity, which "are not worthy of protection." Ammar, supra, 714 F.2d at 257 (citing cases). The above construction also does not limit the exception to communications about "patently illegal activity," a concept that lacks clarity and could prove difficult to apply. See United States v. Parker, 834 F.2d 408 (4th Cir. 1987) (noting ambiguity of "what is meant by 'patently illegal' activity"), cert. denied, 485 U.S. 938, 108 S. Ct.

25

1118, 99 L. Ed. 2d 279 (1988).  Only a minority of circuit courts have adopted that approach.  See Evans, supra, 966 F.2d at 401; Sims, supra, 755 F.2d at 1243; Kahn, supra, 471 F.2d at 194.

To be clear, under the above test, a confession made in confidence to an innocent spouse would remain confidential, but collusion between spouses to advance a joint criminal enterprise would not.  Also, in a criminal investigation that involves a wiretap order, law enforcement officials would of course be required to adhere to the minimization requirements and other safeguards set forth in the Wiretap Act.  See, e.g., N.J.S.A. 2A:156A-12.

We therefore propose that Rule 509 be amended in the following manner:  the marital communications privilege should not protect a communication that relates to an ongoing or future crime or fraud in which the spouses were joint participants at the time of the communication.  A proposed revision to Rule 509, with that change, appears at Appendix A.  The proposal also includes stylistic edits designed to make the rule easier to follow.

## VII.

Defendants argue that if a crime-fraud exception is adopted, it should not apply to them because the State has not shown that they "were furthering a criminal activity . . . [or]

26

that they conspired to commit a crime." If the Legislature and Governor approve a crime-fraud exception to Rule 509 before defendants' trial begins, and if the exception were found to be available in this case, see Rose, supra, 425 N.J. Super. 463 (rejecting ex post facto challenge and holding that forfeiture-by-wrongdoing exception to hearsay rule applied to wrongdoing that occurred before new rule's effective date), it would then be up to the trial court to determine if the exception applies in light of the facts of this case. At this time, we do not opine on the constitutional ex post facto question that defendants' argument implicates.

## VIII.

Defendants have raised additional arguments that are not properly before this Court. They argue that the State failed to show a "special need" to monitor Savoy's cell phones under N.J.S.A. 2A:156A-11 -- a claim that the Appellate Division rejected. See Terry, supra, 430 N.J. Super. at 595. Defendants also argue that the appellate panel "fail[ed] to discuss whether interception of spousal communications violates the minimization requirements of the Wiretap Act." Because defendants did not file a cross-appeal, we do not address those arguments.

## IX.

For the reasons outlined above, we affirm the judgment of the Appellate Division. We also forward to the Senate and

27

General Assembly, for their approval by joint resolution, and to the Governor for his signature, a crime-fraud exception to the marital communications privilege.

JUSTICES LaVECCHIA, ALBIN, PATTERSON and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in CHIEF JUSTICE RABNER's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-71                       SEPTEMBER TERM 2012

ON CERTIFICATION TO      Appellate Division, Superior Court


STATE OF NEW JERSEY,

      Plaintiff-Appellant,

            v.

YOLANDA TERRY and TERON
SAVOY,

      Defendants-Respondents.


DECIDED          July 22, 2014
                 Chief Justice Rabner          PRESIDING

OPINION BY          Chief Justice Rabner

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | AFFIRM | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1

<u>Appendix A</u>

<u>Proposed Revision to Marital Communications Privilege</u> -- changes to the current rule are in bold; deletions are crossed out.

<u>N.J.R.E.</u> 509  Marital Privilege -- Confidential Communications

**(1)** No person shall disclose any communication made in confidence between such person and his or her spouse.

**(2) There is no privilege under this rule**

**(a) if** ~~unless~~ both **spouses** ~~shall~~ consent to the disclosure ~~or~~;

**(b)** ~~unless~~ **if** the communication is relevant to an issue in an action between them ~~or~~;

**(c)** in a criminal action or proceeding in which either spouse consents to the disclosure~~, or~~;

**(d)** in a criminal action or proceeding coming within Rule 23(2) [Rule 501(2)]~~.~~; **or**

**(e) in a criminal action or proceeding if the communication relates to an ongoing or future crime or fraud in which the spouses were joint participants at the time of the communication.**

**(3)** When a spouse is incompetent or deceased, consent to the disclosure may be given for such spouse by the guardian, executor or administrator. The requirement for consent shall not terminate with divorce or separation. A communication between spouses while living separate and apart under a divorce from bed and board shall not be a privileged communication.