**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3207-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARLOS D. CRUZ-MALLQUI,

     Defendant-Appellant.

_____

Submitted November 8, 2021 – Decided January 12, 2022

Before Judges Messano, Rose and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-04-0503.

Joseph E. Krakora, Public Defender, attorney for appellant (Melanie K. Dellplain, Assistant Deputy Public Defender, of counsel and on the brief).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Carlos D. Cruz-Mallqui was convicted of second-degree robbery, N.J.S.A. 2C:15-1(a)(1), and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7),[1] for his part in a December 17, 2016 "snatch-and-grab" robbery outside the victim's apartment complex in Ocean Township. After ordering the appropriate merger, the trial judge sentenced defendant to a six-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On appeal, defendant maintains the post-arrest statements of his juvenile co-defendant, B.R., constituted inadmissible hearsay and were erroneously admitted by the trial judge following a mid-trial Gross[2] hearing. For the first time on appeal, defendant claims the lead detective improperly opined B.R. was not under the influence of Xanax or marijuana when he made his post-arrest statements. Defendant also belatedly challenges the omission of a portion of the model jury charge on identifications. In the alternative, defendant argues his sentence is excessive.

---

[1] The jury found defendant not guilty of first-degree robbery, N.J.S.A. 2C:15-1(a)(1), and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), as charged in a two-count Monmouth County indictment.

[2] State v. Gross, 121 N.J. 1, 15-17 (1990).

We reject these contentions and affirm defendant's convictions and sentence. But we remand for the limited purpose of correcting the judgment of conviction (JOC) to reflect defendant was found guilty of second-degree robbery, as amended, and award the appropriate jail credits.

I.

We summarize the facts and procedural posture relevant to defendant's appeal from the record before the trial judge. In December 2016, Mohammad Fakhare-Alam, and his fifteen-year-old nephew, M.T., lived in the same apartment complex in Ocean Township. M.T. sold various electronics via letgo.com, an internet marketplace for purchasing and selling items locally. The website enabled internal messaging between sellers and prospective buyers, who conducted their transactions in person. M.T.'s profile did not include his phone number.

M.T. listed an iPad for sale on the letgo.com website. B.R.'s girlfriend messaged M.T. through the website expressing her interest in the iPad. After agreeing on a purchase price, B.R. and his girlfriend met M.T. outside Fakhare-Alam's home and made the deal seamlessly. B.R. and M.T. exchanged phone numbers in anticipation of future cellphone purchases.

On December 17, 2016, M.T. received a text message from an unknown phone number, expressing an interest in purchasing iPads and cellphones. M.T. assumed from the message's context that the text was sent from a friend of B.R. M.T. agreed to sell the only two cellphones he had available for $1,130 and sent the individual his uncle's address so they could meet outside Fakhare-Alam's home. B.R. arrived at the meet location with defendant. Fakhare-Alam accompanied M.T. for his "safety" in view of the large sum of money involved.

Upon inspecting the phones, B.R. and defendant negotiated half off the asking price but refused to tender any money. Because "they were acting fishy," Fakhare-Alam asked B.R. and defendant to return the phones. They complied but as M.T. and his uncle walked away, defendant "grabbed [Fakhare-Alam] in a headlock"; "slammed him on the ground"; and punched him multiple times in the face. B.R. "kicked [Fakhare-Alam] in the forehead," and grabbed the phone box that had fallen from Fakhare-Alam's pocket before both assailants fled the area. Fakhare-Alam was rendered unconscious during the attack; he required hospital treatment for multiple contusions and fractures to his jaw and cheekbone.

That same night, M.T. gave a statement to Ocean Township Police Detective Michael Legg, detailing his communications with B.R.'s girlfriend

through the letgo.com website. Utilizing a police database, Legg quickly associated the girlfriend with B.R. and obtained his photo. M.T. identified B.R.'s photo from a photographic lineup.

Following his arrest on December 19, 2016, seventeen-year-old B.R. waived his Miranda[3] rights in the presence of his mother and gave a statement to Legg and another detective. During the one-hour-and-thirty-minute interview, B.R. neither appeared to be under the influence of any controlled dangerous substances nor advised the detectives that he was so impaired. B.R. said he had "a few beers" at the time of the incident but did not claim he was too intoxicated to recall the events as they occurred two days prior.

Instead, B.R. described his involvement in the incident, "reenact[ing] part of it" for the detectives. B.R. told police he tossed the stolen iPad box near his home "between the tree and the fence next to a piece of wood." Police later recovered the phone's box from that area. B.R. stated he was with "Carlos," who "hit the guy"; provided a description of Carlos; and told the detectives Carlos worked at the Ruby Tuesday restaurant in the Freehold Mall. B.R.'s mother gave the detectives a photograph of "Carlos" from a social media account. Police thereafter confirmed "Carlos Cruz" worked at the restaurant.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

On December 21, 2016, police separately administered photographic lineups to Fakhare-Alam and M.T. Fakhare-Alam identified defendant from one of six photographs; he was ninety-five percent certain defendant was the man who attacked him. M.T. separately identified defendant's photograph from another six-photo array; he was seventy percent sure of his identification.

Prior to defendant's trial, B.R. pled guilty before a Family Part judge to an act that, if committed by an adult, would constitute second-degree robbery. Similar to his post-arrest statement to the detectives, B.R. inculpated "Carlos" during the factual basis for his guilty plea.[4]

At defendant's trial, however, B.R. contradicted his post-arrest statements to police and the factual basis supporting his guilty plea. B.R. told the jury he took part in the robbery with "[o]ne of [his] homies," named "Danny," who also was known as "Benny," and "Raphael," but not "Carlos." B.R. acknowledged he told police he committed the offense with his "cousin, Carlos," but denied that Carlos was present in the courtroom. Stating he was under the influence of Xanax at the time of the incident, B.R. claimed he could not recall many of the details of his prior sworn statements.

---

[4] B.R. was sentenced to a probationary term in juvenile court on March 6, 2017. The order of disposition was not provided on appeal but was referenced by the trial judge during the Gross hearing.

At the prosecutor's request, the trial judge excused the jury and conducted a <u>Gross</u> hearing to determine the admissibility of B.R.'s prior statements. During the hearing, the prosecutor played B.R.'s video-recorded, post-arrest statement to police. The judge also considered the testimony of Legg and B.R., who gave contradictory accounts of B.R.'s mental state during the interview: Legg stated B.R. did not appear to be intoxicated; B.R. contended he was under the influence of both Xanax and marijuana.

Crediting the testimony of Legg – and assessing B.R.'s credibility as "very low" – the trial judge determined the State established the reliability of B.R.'s prior statement to police. The judge ruled the statement would be admitted in evidence, subject to certain redactions.[5] The judge also determined the transcript of B.R.'s factual basis for his guilty plea was admissible. When the trial resumed, B.R.'s video-recorded statement to police was played for the jury. B.R. ultimately acknowledged he and defendant "did the robbery together."

During the five-day trial, the State also produced Fakhare-Alam, M.T., Legg, and two other witnesses, along with multiple exhibits, including the photo

---

[5] Redactions included conversations between B.R. and his mother when the detectives exited the interview room.

arrays containing defendant's photos. Defendant did not testify or offer any evidence on his behalf.

On appeal, defendant raises the following points for our consideration:

POINT I

DEFENDANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL BECAUSE THE STATE INTRODUCED A PRIOR INCONSISTENT STATEMENT OF ITS OWN WITNESS WITHOUT SATISFYING THE REQUIREMENTS OF N.J.R.E. 803([a])(1)(A).

POINT II

DEFENDANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN DETECTIVE MICHAEL LEGG GAVE IMPROPER LAY OPINION TESTIMONY THAT WHEN CO-DEFENDANT B.R. GAVE A STATEMENT TO THE POLICE THAT INCRIMINATED DEFENDANT, B.R. WAS NOT INTOXICATED FROM MARIJUANA OR XANAX.
(Not raised below).

POINT III

THE COURT'S OMISSION OF THE PORTION OF THE IDENTIFICATION CHARGE EXPLAINING HOW TO EVALUATE A WITNESS'S CONFIDENCE AND ACCURACY CONSTITUTED PLAIN ERROR.
(Not raised below).

THE CUMULATIVE IMPACT OF THE ERRORS DENIED [DEFENDANT] DUE PROCESS AND A FAIR TRIAL.
(Not raised below).

POINT V

DEFENDANT'S SENTENCE IS EXCESSIVE BECAUSE (1) HIS YOUTH SHOULD BE CONSIDERED AS A MITIGATING FACTOR, AND (2) HE IS ENTITLED TO ONE ADDITIONAL DAY OF JAIL CREDIT.
(Not raised below)

A.   Defendant's Youth Should Be Considered as a Mitigating Factor.

I.   Defendant Is Entitled To A Remand Under The Provisions Of The Savings Statute, N.J.S.A. 1:1-15, Because The Amendment:  Pertained To A Mode Of Procedure, The Proceedings On The Indictment Are Ongoing, And A Remand Is Practicable.

II. The Amendment to N.J.S.A. 2C:44-1(b) Should Be Applied to Defendant's Sentence Retroactively Because the Legislature's Implicit Intent Was for Retroactivity and the Amendment is Ameliorative.

1.  The Legislature did not express a clear intent for prospective application.

2.    The other language of the mitigating factor indicates retroactive application; the presumption of prospective application is inapplicable; and the law is clearly ameliorative.

3.    There is no manifest injustice to the State in applying the mitigating factor retroactively.

B.    Defendant is entitled to one additional day of jail credit.

With the exception of the additional day of jail credit, we reject these contentions and affirm.

## II.

We first consider defendant's contentions that the trial judge erroneously admitted in evidence B.R.'s prior recorded statement to police under N.J.R.E. 803(a)(1)(A).[6] Defendant acknowledges the judge conducted a Gross hearing to consider the admissibility of the statement, but argues the judge "completely disregarded B.R.'s testimony" that he was under the influence of marijuana or Xanax when questioned by police and Legg was not trained to determine an individual was under the influence of Xanax. Defendant further claims the judge

---

[6] Defendant does not challenge the judge's ruling that admitted in evidence the transcript of B.R.'s factual basis supporting his guilty plea.

inconsistently determined "B.R.'s statement to the police was not at all credible" yet sufficiently reliable under Gross. Defendant's contentions are misplaced.

"We review the trial court's evidentiary ruling 'under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'" State v. Williamson, 246 N.J. 185, 198-99 (2021) (quoting State v. Prall, 231 N.J. 567, 580 (2018)). We only reverse those rulings that "undermine confidence in the validity of the conviction or misapply the law." State v. Weaver, 219 N.J. 131, 149 (2014).

In determining whether to admit prior statements, the trial court necessarily makes credibility determinations and related factual findings. State v. Soto, 340 N.J. Super. 47, 69 (App. Div. 2001). These "credibility determinations are entitled to deference and [the court's] factual findings must be sustained as long as they are supported by sufficient, credible evidence in the record." State v. Yohnnson, 204 N.J. 43, 62 (2010).

N.J.R.E. 803(a)(1)(A) provides prior inconsistent statements may be admitted as substantive evidence if they are inconsistent with a witness's testimony and, if offered by the party calling the witness, they are sound-recorded or in a writing made or signed by the witness. The rule is designed to

"expose to the jury the possibility that the witness is lying, and to give the jury an alternative account of the events that it may choose to use as substantive evidence rather than the account offered by the witness." State v. Brown, 138 N.J. 481, 544 (1994), overruled on other grounds by State v. Cooper, 151 N.J. 326 (1997). However, the jury "must observe the witness and make a decision about which account is true." Id. at 544; see also State v. Slaughter, 219 N.J. 104, 117 (2014) (permitting prior inconsistent witness statements in evidence "so long as 'the witness feigns a loss of memory on the stand'") (quoting State v. Cabbell, 207 N.J. 311, 337 (2011)).

Before admitting a witness's prior inconsistent statement under this rule, the trial court "should be convinced by a preponderance of the evidence that the evidence is sufficiently reliable for presentation to the jury." Brown, 138 N.J. at 539. To make this determination, the trial court conducts a "Gross hearing" outside the presence of the jury pursuant to N.J.R.E. 104(a), see State v. Greene, 242 N.J. 530, 540 n.2 (2020), and considers the non-exhaustive list of fifteen factors adopted by the Court in Gross:

> (1) the declarant's connection to and interest in the matter reported in the out-of-court statement; (2) the person or persons to whom the statement was given; (3) the place and occasion for giving the statement; (4) whether the declarant was then in custody or otherwise the target of investigation; (5) the physical and mental

condition of the declarant at the time, (6) the presence or absence of other persons; (7) whether the declarant incriminated himself or sought to exculpate himself by his statement; (8) the extent to which the writing is in the declarant's hand; (9) the presence or absence, and the nature of, any interrogation; (10) whether the offered sound recording or writing contains the entirety, or only a portion of the summary, of the communication; (11) the presence or absence of any motive to fabricate; (12) the presence or absence of any express or implicit pressures, inducement or coercion for the making of the statement; (13) whether the anticipated use of the statement was apparent or made known to the declarant; (14) the inherent believability or lack of believability of the statement; and (15) the presence or absence of corroborating evidence.

[121 N.J. at 10 (quoting State v. Gross, 216 N.J. Super. 98, 109-10 (App. Div. 1987)).]

In the present matter, the judge aptly considered the relevant Gross factors, finding: B.R.'s recorded statement to police was made under oath, in the presence of his mother, at the police station (factors two, three, four, and six); B.R. admitted his involvement in the robbery with defendant (factors one and seven); the detectives did not coerce defendant to make a statement during their questioning (factors nine and twelve); and B.R. attempted "to help himself" during his statement and, as such, "he did not have a motive to fabricate" (factor eleven).

13

The judge expressly rejected B.R.'s belated testimony – adduced on cross-examination during the hearing – that he was under the influence of Xanax or marijuana when he gave his statement to police (factor five). Instead, the judge credited Legg's ability to discern whether an individual was under the influence due to the detective's "many years' experience" in law enforcement. The judge was particularly persuaded that portions of B.R.'s statements were corroborated by police (factor fifteen). Finally, referencing N.J.R.E. 803(a)(1)(A), the judge noted both B.R.'s post-arrest statement to police and his factual basis in juvenile court were made under oath.

Contrary to defendant's contentions on appeal, the trial judge considered, but rejected, defendant's assertion at trial and during the Gross hearing that B.R. was under the influence when he gave his statement. In doing so, the judge properly evaluated the testimony of Legg and B.R. and made credibility determinations that are supported by the record and entitled to our deference. Yohnnson, 204 N.J. at 62. Further, we are not convinced the judge found B.R.'s post-arrest statement incredible. Indeed, the judge noted B.R.'s statement was corroborated by other evidence: Police determined "Carlos Cruz" worked at the Ruby Tuesday in Freehold; and the iPhone box was recovered from the area where B.R. told police he had tossed it.

14

Based on our review of the record, the trial judge's findings were grounded in the proofs and were sound.  Moreover, the jury was afforded the opportunity to observe B.R.'s demeanor both on the witness stand when he claimed loss of memory and during his video-taped statement to police.  See Brown, 138 N.J. at 544.  We therefore agree with the judge's conclusion that the State demonstrated, by a preponderance of the evidence, B.R.'s statement was "sufficiently reliable for presentation to the jury."  See id. at 539.  As such, the judge did not abuse his discretion by admitting the post-arrest statement after B.R.'s memory lapse at trial.

III.

In point II, defendant belatedly contends Legg impermissibly rendered lay opinion testimony during both the Gross hearing and at trial.  Defendant claims Legg was not qualified to opine B.R. was not under the influence of marijuana or Xanax when he made his post-arrest statement.  Because defendant's contentions were not raised before the trial court, we review the issue for plain error.  Under that standard, we disregard any error or omission by the trial court "unless it is of such a nature as to have been clearly capable of producing an unjust result."  R. 2:10-2.

15

At trial, Legg testified that in his "thirteen years as a law enforcement officer" he had the "opportunity to observe individuals who have been under the influence of various types of substances." Based on that "knowledge and experience," Legg described for the jury the symptoms an individual under the influence of marijuana might exhibit, including: "Bloodshot eyes, slurred speech, slow movements, potentially an odor of marijuana on them; burnt marijuana." Legg also explained the symptoms of Xanax included "slow movements; somewhat slurred speech," which were "[s]imilar to almost being drunk . . . with alcohol." Legg's testimony during the Gross hearing was substantially similar. According to Legg, B.R. exhibited none of the symptoms he described as indicative of marijuana or Xanax use. Nothing "raised a red flag" that "B.R. might be under the influence of any type of substance."

Pursuant to N.J.R.E. 701, lay opinion testimony "can only be admitted if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function." State v. McLean, 205 N.J. 438, 456 (2011). As to the first requirement, the witness's perception "rests on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." Id. at 457. Secondly, the testimony must "assist the trier of fact either by helping to explain the witness's testimony or by

shedding light on the determination of a disputed factual issue." Id. at 458; see also State v. Singh, 245 N.J. 1, 5 (2021) (reaffirming "N.J.R.E. 701 requires only that testimony be rationally based on the witness's perception and that such testimony help the jury").

In the present case, defendant argues Legg's opinion contravened our Supreme Court's holding in State v. Bealor that a lay witness may not opine an individual was intoxicated from marijuana or a narcotic drug. 187 N.J. 574, 577 (2006). Again, defendant's argument is misplaced.

In Bealor, the defendant was charged with driving a motor vehicle while under the influence of marijuana, N.J.S.A. 39:4-50. Two State Police troopers observed defendant driving erratically, pulled over the car, approached the passenger side door, and smelled burnt marijuana. Id. at 577-78. The defendant's eyes appeared bloodshot and glassy, his eyelids drooped downward, and his face was pale and flushed, he spoke very slowly, and slurred his words. Id. at 578. The defendant emitted the odor of alcohol and marijuana. Following his arrest, the defendant's urine sample tested positive for marijuana metabolite. Id. at 580. The trial judge convicted the defendant as charged; we reversed; and the Court reinstated defendant's conviction. Id. at 583.

Pertinent to this appeal, the Court held:

> [A]lthough evidentially competent lay observations of the fact of intoxication are always admissible, lay opinion in respect of the _cause_ of intoxication other than from alcohol consumption is not admissible because, unlike alcohol intoxication, "[n]o such general awareness exists as yet with regard to the signs and symptoms of the condition described as being 'high' on marijuana."
>
> [Id. at 577 (alteration in original) (emphasis added) (quoting State v. Smith, 58 N.J. 202, 213 (1971)).]

Here, Legg did not opine as to the cause of B.R.'s intoxication. Legg testified about his observations of B.R. and the absence of any indicia that B.R. was intoxicated when he gave his post-arrest statement. Legg's opinion was properly based on his perceptions of B.R.'s speech and appearance. See McLean, 205 N.J. at 456-57. Moreover, the video recording of B.R.'s police interview was played in court and thus enabled the jurors to make their own assessment as to whether B.R. appeared intoxicated. In sum, because Legg did not opine as to the cause of B.R.'s alleged intoxication, his testimony did not contravene the Court's holding in Bealor. We therefore discern no error, let alone plain error, in the admission of Legg's lay opinion testimony at trial and during the Gross hearing.

IV.

For the first time on appeal, defendant argues the trial judge's instructions regarding identification were flawed. Defendant contends the judge erroneously omitted the "Confidence and Accuracy" portion of the identification jury charge, see Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. July 19, 2012),[7] thereby warranting reversal of his convictions and a new trial. We disagree.

Because defendant did not object to the jury instruction at trial, we again review his newly-minted challenges through the prism of the plain error standard. See State v. Wakefield, 190 N.J. 397, 473 (2007) (holding that under Rules 1:7-2 and 2:10-2, "the failure to object to a jury instruction requires review under the plain error standard"). When the trial court fails to issue an identification instruction, "[t]he determination of plain error depends on the strength and quality of the State's corroborative evidence rather than on whether defendant's misidentification argument is convincing." State v. Cotto, 182 N.J. 316, 326 (2005).

---

[7] Following the Court's decision in State v. Anthony, 237 N.J. 213, 234-35 (2019), the model jury charge was revised. See Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identification" (rev. May 18, 2020). Those revisions do not pertain to the issues on appeal in this case, which was tried before Anthony was decided.

During the preliminary charge conference, the trial judge informed counsel he intended to issue the "in- and out-of-court" identification charge, "tailor[ing] it to what was really in this case." Defense counsel agreed the charge was warranted but did not request the inclusion of specific provisions. The following day, before issuing the charge to the jury, the judge provided the parties with written copies of his proposed charge. Turning to the identification charge, the judge asked whether the parties had "any issues with that." Defense counsel replied: "Judge, on behalf of the defense, I thought that the form of that was appropriate." Defendant posed no objection to the charge as issued.

As defendant now contends, the trial judge failed to charge the following section of the identification charge:

> Confidence and Accuracy: You heard testimony that (insert name of witness) made a statement at the time he/she identified the defendant from a photo array/line-up concerning his/her level of certainty that the person/photograph he/she selected is in fact the person who committed the crime. As I explained earlier, a witness's level of confidence, standing alone, may not be an indication of the reliability of the identification. Although some research has found that highly confident witnesses are more likely to make accurate identifications, eyewitness confidence is generally an unreliable indicator of accuracy.
>
> [Model Jury Charges (Criminal), "Identification: In-Court and Out-of-Court Identifications" (rev. July 19, 2012) (footnotes omitted).]

20

However, the charge as given closely followed the general portions of the identification charge:

> Eyewitness identification evidence must be scrutinized carefully.
>
> . . . .
>
> In evaluating this identification, you should consider the observations and perceptions on which the identification was based, the witness's ability to make those observations and perceive events, and the circumstances under which the identification was made. Although nothing may appear more convincing than a witness's categorical identification of a perpetrator, you must critically analyze such testimony. Such identifications, even if made in good faith, may be mistaken. Therefore, <u>when analyzing such testimony, be advised that a witness's level of confidence, standing alone, may not be an indication of the reliability of the identification.</u>

[<u>Id.</u> (emphasis added) (footnote omitted).]

Given the similarity between these instructions, defendant was not prejudiced by the omitted language. As stated, the jury heard testimony that Fakhare-Alam was ninety-five percent certain of his identification of defendant, while M.T. was seventy percent sure. Moreover, B.R. inculpated defendant in his statement to police, his factual basis supporting his guilty plea, and ultimately during his trial testimony. Thus, the trial evidence substantially corroborated the identifications made by M.T. and Fakhare-Alam. Having

21

considered the charge as a whole, <u>State v. Torres</u>, 183 N.J. 554, 564 (2005), and "the strength and quality of the State's corroborative evidence[,]" <u>Cotto</u>, 182 N.J. at 326, we are not persuaded that the omission of the factors defendant now deems relevant had the capacity to bring about an unjust result, <u>R.</u> 2:10-2.

## V.

As to point IV, we reject defendant's contention that the cumulative effect of the errors committed during his trial warrants reversal. Defendant has failed to demonstrate any error or pattern of errors, rising to the level, either singly or cumulatively, that denied him a fair trial. "'A defendant is entitled to a fair trial but not a perfect one.'" <u>Wakefield</u>, 190 N.J. at 537 (quoting <u>State v. R.B.</u>, 183 N.J. 308, 334 (2005)).

## VI.

Lastly, we turn to defendant's excessive sentencing argument. Defendant primarily claims he is entitled to resentencing for retroactive application of mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14), which added a new mitigating factor for crimes committed by defendants under the age of twenty-six and was enacted after defendant was sentenced. Defendant does not otherwise challenge the judge's assessment of aggravating and mitigating

factors.[8]

While defendant's appeal was pending, the State filed a supplemental response, pursuant to Rule 2:6-11(d), citing our recent decision in State v. Bellamy, 468 N.J. Super. 29 (App. Div. 2021), to further support its argument that mitigating factor fourteen is not retroactive here, where defendant is not otherwise entitled to resentencing. Defendant responded that the State's reliance on dictum in Bellamy supports retroactive application of mitigating factor fourteen.[9]

Born in October 1993, defendant was twenty-three years old when he committed the offense in February 2016. The trial judge sentenced defendant on July 20, 2018, and he filed the present appeal on March 29, 2019. In the

---

[8] The trial judge found aggravating factors three (the risk of reoffending); six (the extent of the defendant's prior record); and nine (general and specific deterrence), N.J.S.A. 2C:44-1(a) (3), (6), and (9), "substantially outweigh[ed]" mitigating factor three ("defendant acted under a strong provocation"), N.J.S.A. 2C:44-1(b)(3).

[9] Following the Court's recent decision in State v. Rivera, __ N.J. __ (2021), the State filed another supplemental submission under Rule 2:6-11(d), arguing the decision supported its position the N.J.S.A. 2C:44-1(b)(14) should be applied prospectively. Defendant responded, and we agree, that the Court in Rivera only addressed whether a sentencing court could consider youth as an aggravating factor. However, the issue as to whether mitigating factor fourteen applies retroactively is pending before the Court. State v. Lane, No. A-0092-20 (App. Div. Mar. 23, 2021), certif. granted, ___ N.J. ___ (2021).

interim, the Legislature enacted N.J.S.A. 2C:44-1(b)(14), and expressly deemed the factor "effective immediately" on October 19, 2020. L. 2020, c. 110; see also Bellamy, 469 N.J. Super. at 45 (recognizing the "plain language of the Assembly Bill" evinced the Legislature's clear intent to apply the statute prospectively).

Notwithstanding the plain terms of the amendment, defendant contends he is entitled to pipeline retroactivity under the "second part of the savings statute," N.J.S.A. 1:1-15, because, among other things, the amendment concerns a "mode of procedure" and not a substantive provision. The savings statute provides, in relevant part:

> [W]hen the Revised Statutes, or other act by which such repeal or alteration is effectuated, shall relate to mere matters of practice or mode of procedure, the proceedings had thereafter on the indictment or in the prosecution for such offenses, liabilities, penalties or forfeitures shall be in such respects, as far as is practicable, in accordance with the provisions of the Revised Statutes or such subsequent act.
>
> [N.J.S.A. 1:1-15.]

Thus, this section of the savings statute addresses amendments that "relate to mere matters of practice or mode of procedure," and "explains that procedural changes are generally not applied retroactively to concluded proceedings but do apply to proceedings taking place after the effective date of the new statute."

24

State in Int. of J.D., 467 N.J. Super. 345, 355 (App. Div. 2021); see also State v. Rose, 425 N.J. Super. 463, 468 (App. Div. 2012) (recognizing "well-settled principles that new rules relating only to modes of procedure and the conduct of trials, in which no one can be said to have a vested right, apply if they are in effect at [the] time of trial, regardless of when the underlying crime was committed").

Conversely, the assessment of aggravating and mitigating factors at sentencing is not a "mode of procedure," but rather a substantive provision of the court's sentencing criteria. See State v. Kruse, 105 N.J. 354, 359 (1987) ("In determining the appropriate sentence, the court must decide whether there is a preponderance of aggravating or mitigating factors."). Although mitigating factor fourteen does not redefine elements of a criminal offense, it may, under certain circumstances, result in the reduction of a youthful defendant's criminal penalty. By adding youth as an independent mitigating factor, the new law builds on other substantive considerations under N.J.S.A. 2C:44-1(b), including the defendant's conduct, lack of prior record, and "character and attitude." N.J.S.A. 2C: 44-1(b)(1)-(13). Thus, the effect of the new mitigating factor is the potential reduction in the ultimate sentence and not the manner in which that sentence is imposed. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J.

144, 162 (2003) (Zazzali, J., concurring in part and dissenting in part) ("Substantive law defines the parties' rights and duties, whereas procedural law regulates the means through which those rights and duties are enforced.").

Nor are we persuaded by defendant's alternate argument that retroactive application of the amended legislation is ameliorative and consistent with "the Legislature's implicit intent." Even if we were to agree with defendant that N.J.S.A. 2C:44-1(b)(14) is ameliorative in nature, a remand for resentencing is not warranted under the circumstances presented here. We addressed this issue in Bellamy.

Citing D.C. v. F.R., 286 N.J. Super. 589, 605 (App. Div. 1996), we recognized "[t]he inclusion of an additional mitigating factor has the potential to effect a 'reduction of a criminal penalty,' thereby rendering N.J.S.A. 2C:44-1(b) ameliorative." Bellamy, 468 N.J. Super. at 47. We held where there is an independent basis to order a new sentencing hearing, mitigating factor fourteen should be applied in the new sentencing proceedings. Id. at 48. We explained our decision was:

> not intended to mean cases in the pipeline in which a youthful defendant was sentenced before October 19, 2020, are automatically entitled to a reconsideration based on the enactment of this statute alone. Rather, it means where, for a reason unrelated to the adoption of

the statute, a youthful defendant is resentenced, he or she is entitled to argue the new statute applies.

[Ibid.]

The circumstances at issue in Bellamy were inapposite to the sentencing issue raised in the present appeal. In Bellamy, we remanded the matter for the sentencing court to consider previously undisclosed reports from the Division of Child Protection and Permanency and reconsideration of the aggravating and mitigating factors before a new judge. Id. at 50-51. In view of that resentencing, the defendant in Bellamy, therefore, had "yet to incur a penalty within the meaning of the savings statute." Id. at 45. Rather than limiting mitigation to the original thirteen factors that existed at the time of defendant's offense, the defendant's resentencing triggered consideration of the new mitigating factor fourteen on remand. Id. at 50-51.

No such independent basis for resentencing exists here. Defendant does not advance any independent basis unrelated to mitigating factor fourteen that would otherwise warrant resentencing. Accordingly, the mitigating factors "in effect at [the] time" of defendant's sentencing in 2018 properly governed that proceeding. Rose, 425 N.J. Super. at 468. Defendant therefore is not entitled to reconsideration of his sentence with the new mitigating factor.

We conclude the six-year sentence imposed was manifestly appropriate

A-3207-18

and by no means shocks our judicial conscience. <u>State v. Bolvito</u>, 217 N.J. 221, 228 (2014). Indeed, the sentence imposed falls at the lower end of the second-degree range. N.J.S.A. 2C:43-6(a)(2) (requiring the court to impose a five- to ten-year term of imprisonment on a second-degree offense).

However, we remand to correct the JOC on two grounds. Initially, as the State agrees, defendant is entitled to one additional day of jail credit for February 26, 2017, when he was arrested on unrelated Passaic County charges, but held simultaneously on the present charges. <u>See</u> <u>R.</u> 3:21-8(a) (providing, in relevant part, a "defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail . . . between arrest and the imposition of sentence").

Secondly, the JOC shall be amended to reflect defendant was convicted of second-degree robbery, as amended, consistent with the jury's verdict and the judge's oral decision. <u>See</u> <u>State v. Rivers</u>, 252 N.J. Super. 142, 147 n.1 (App. Div. 1991); <u>see also</u> <u>State v. Pohlabel</u>, 40 N.J. Super. 416, 423 (App. Div. 1956) (recognizing the oral pronouncement is "the true source of the sentence" whereas the creation of the JOC is "merely the work of a clerk").

To the extent not specifically addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in this written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed, but remanded solely to correct the JOC.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION