NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1230-22

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

DENNIS F. GARGANO, JR. and
CLARENCE D. GRANT,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **August 28, 2023** |
| **APPELLATE DIVISION** |

Argued May 17, 2023 – Decided August 28, 2023

Before Judges Vernoia, Firko and Natali.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 17-02-0034.

William P. Cooper-Daub, Deputy Attorney General, argued the cause for appellant (Matthew J. Platkin, Attorney General, attorney; William P. Cooper-Daub, of counsel and on the briefs).

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for respondent Clarence D. Grant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs; Glenn D. Kassman, Designated Counsel, on the briefs).

Patricia Colligan, Designated Counsel, argued the cause for respondent Dennis F. Gargano, Jr. (Joseph E. Krakora, Public Defender, attorney; Patricia Colligan, on the briefs).

The opinion of the court was delivered by

VERNOIA, J.A.D.

This appeal requires that we consider whether the trial court correctly determined the State's interception of privileged marital communications between codefendant spouses Clarence D. Grant and Nicole Villa-Grant during the execution of wiretap orders issued pursuant to the New Jersey Wiretapping and Surveillance Control Act, N.J.S.A. 2A:156A-1 to -37 (Wiretap Act), requires suppression of all other non-privileged communications intercepted following the first interception of a privileged marital communication. Based on the plain language of the Wiretap Act and the circumstances presented, we conclude the court correctly determined suppression of the non-privileged interceptions is mandated under N.J.S.A. 2A:156A-21, which broadly requires suppression of "the entire contents of all intercepted wire, electronic[,] or oral communications obtained during or after any interception" that is "unlawfully

2

intercepted" or "not made in conformity with" the wiretap order and authorization.[1]

## I.

The facts pertinent to a disposition of the issues presented on appeal are not disputed. In 2015, the New Jersey State Police investigated a suspected Ocean County drug distribution operation. The State Police applied for wiretap orders authorizing interception of electronic communications on four phone facilities — cellular phones — one of which was subscribed to Grant's spouse, Villa-Grant, another of which was subscribed to codefendant James Gorman, and the remaining two of which were subscribed to other individuals who were suspected participants in the alleged drug distribution operation.

On February 27, 2015, the court granted the State Police's application and entered four separate wiretap orders, one for each of the four cellular phones. The orders identically required the interceptions "shall end as soon as practical and be conducted in a way as to minimize or eliminate the interception of communications other than the type described herein . . . ." The orders authorized wiretap interceptions of electronic communications over

---

[1] As we explain, the State does not challenge the court's suppression of the intercepted, privileged, marital communications. See N.J.S.A. 2A:156A-11 (providing in part, "[n]o otherwise privileged wire, electronic[,] or oral communication intercepted in accordance with, or in violation of, the provisions of [the Wiretap Act], shall lose its privileged character.").

A-1230-22

the phones for a period of twenty-days commencing at 4:00 p.m. on February 27, 2015.

On March 20, 2015, the State Police sought, and obtained, a thirty-day extension of the wiretap orders for three of the four cellular phones,[2] as well as a thirty-day wiretap order for an additional cellular phone subscribed to an individual not previously identified in the initial wiretap order application. The application submitted in support of the extension of the February 27, 2015 wiretap orders explained that wiretap interceptions from the phone subscribed to Villa-Grant revealed "Grant distributes cocaine, prescription pills, marijuana[,] and heroin, and directs subordinates to solicit both buyers of cocaine and to distribute cocaine and prescription pills[,]" and that "Grant's wife," Villa-Grant, and another individual, conspired with Grant to "thwart law enforcement" and "assist[] with narcotics transactions."

In its March 20, 2015 orders granting the State Police's application, the court authorized thirty-day extensions of the wiretap orders for three of the four phones covered by the February 27, 2015 order, including the phone subscribed to Villa-Grant, and an initial thirty-day order allowing wiretap interceptions on the fourth newly-added phone. The court entered separate

---

[2]  The State Police did not seek or obtain an extension of the wiretap order for Gorman's cellular phone.

orders for each phone. The orders included a requirement the wiretap interceptions "end as soon as practical and be conducted in a way as to minimize or eliminate the interception of communications other than the type described" in the order.

On February 27, 2015, within hours of the issuance of the initial wiretap orders, the State Police intercepted what it concedes was the first of what turned out to be 306 privileged marital communications between spouses Grant and Villa-Grant through April 16, 2015. Following the February 27, 2015 interception of the first privileged marital communication between Grant and Villa Grant, and through April 16, 2015, the State Police intercepted numerous other non-privileged communications among the alleged participants in the drug distribution network that, according to the State, are evidential of the various defendants' — including Grant's and Dennis F. Gargano, Jr.'s — commission of crimes for which they have been charged.

As a result of the evidence developed during the State Police investigation, a grand jury returned an indictment charging: Grant with first-degree leader of a drug distribution network, N.J.S.A. 2C:35-3; Grant and Gorman with first-degree conspiracy to distribute a controlled dangerous substance (CDS), cocaine, N.J.S.A. 2C:35-5(a)(1), -5(b)(1), -5(c), and N.J.S.A. 2C:2-6; Grant, Villa-Grant, Gorman, Gargano, and two others with second-

5

degree conspiracy to distribute CDS, cocaine, N.J.S.A. 2C:35-5(a)(1), -5(b)(1), -5(c), and N.J.S.A. 2C:5-2; Grant, Gargano, and two others with conspiracy to commit burglary, N.J.S.A. 2C:18-2, N.J.S.A. 2C:20-3, and N.J.S.A. 2C:5-2; Villa-Grant with third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and Grant, Gorman, and another individual with third-degree possession of CDS, cocaine, N.J.S.A. 2C:35-10(a)(1).

In a motion filed on behalf of Villa-Grant, and joined by Grant and Gargano, they sought suppression of all the wiretap interceptions following the February 27, 2015 initial interception of a privileged marital communication between Grant and Villa-Grant. They argued interception of the privileged marital communications was unlawful under the Wiretap Act, violated the minimization requirement attendant to all wiretap orders, and therefore required suppression under N.J.S.A. 2A:156A-21. As noted, the statute mandates suppression of "the entire contents of all intercepted, wire, electronic[,] and oral communications obtained during or after any interception which is determined to be in violation of" the Wiretap Act, as either "unlawfully intercepted" or intercepted in a manner "not in conformity with

the order or authorization or in accordance with the requirements of" N.J.S.A. 2A:156-12.[3]  N.J.S.A. 2A:156A-21.

The court denied the motion.  In its written statement of reasons, the court explained that, at the time the marital communications were intercepted under the wiretap orders, N.J.R.E. 509 provided a privilege for such communications.  The court, however, noted that effective November 9, 2015, following the initial interception of the marital communication between Grant and Villa-Grant, N.J.R.E. 509 was amended to include a crime-fraud exception to the marital communications privilege.[4]  L. 2015, c. 138, § 2, eff. Nov. 9, 2015.

The court determined the crime-fraud exception in the amended N.J.R.E. 509 applied retroactively, and, for that reason, interceptions of marital communications on February 27, 2015, and thereafter, were not unlawful because the communications were made in furtherance of ongoing or future crimes.  The court reasoned interception of the marital communication was

---

[3]  N.J.S.A. 2A:156A-12 prescribes the requirements for "[e]ach order authorizing the inception of any wire, electronic[,] or oral communication" issued under the Wiretap Act.

[4]  The November 9, 2015 amendment to N.J.R.E. 509 added paragraph (2)(e), which provides that "[t]here is no [marital communications] privilege . . . in a criminal action or proceeding if the communication relates to an ongoing or future crime or fraud in which the spouses or partners were or are joint participants at the time of the communication."  N.J.S.A. 2A:84A-22(2)(e).

therefore not unlawful under the Wiretap Act and did not require suppression under N.J.S.A. 2A:156A-21 of the non-privileged interceptions that followed it. The court later denied defendants' joint motion for reconsideration.

Three years later, Gargano filed a motion, which Grant joined, for reconsideration of the order denying the motion to suppress the non-privileged wiretap communications under N.J.S.A. 2A:156A-21.[5] They argued the Supreme Court's holding in State v. Bailey — that the 2015 amendment to N.J.R.E. 509 adding the crime-fraud exception was not retroactive, 251 N.J. 101, 127 (2022) — undermined the trial court's previous reliance on the exception as the basis for its determination that interception of the privileged marital communications between Grant and Villa-Grant did not violate the Wiretap Act. Gargano and Grant claimed the court erred by finding suppression of all the intercepted non-privileged communications following the first interception of a privileged marital communication between Grant and Villa-Grant was not required under N.J.S.A. 2A:156A-21.

The State conceded the Court's holding in Bailey warranted reconsideration of the order denying the suppression motion. The State agreed all 306 intercepted marital communications between Grant and Villa-Grant

---

[5] Villa-Grant did not join in the motion because she had resolved the charges against her. She is not a party to this appeal.

were privileged and inadmissible at trial because the communications had been intercepted prior to the amendment to N.J.R.E. 509 adding the crime-fraud exception. The State, however, argued interception of the communications was authorized by the wiretap orders and interception of the privileged communications are not per se unlawful under the Wiretap Act. See N.J.S.A. 2A:156A-11 (addressing issues related to interception of privileged communications).

Although conceding the intercepted marital communications were inadmissible under N.J.S.A. 2A:156A-11, the State claimed suppression of the intercepted non-privileged communications under the wiretap orders was not required or permitted under N.J.S.A. 2A:156A-21. The State also argued the State Police acted reasonably and in good faith in the extrinsic and intrinsic minimization of the wiretap communications.

The court granted the reconsideration motion, finding the initial February 27, 2015 intercepted privileged marital communication, and the 305 intercepted privileged marital communications that followed until April 16, 2015, were "unlawfully intercepted" under the Wiretap Act and "not made in conformity with the order of authorization or in accordance with the requirements of" N.J.S.A. 2A:156A-12. See N.J.S.A. 2A:156A-21(a) and (c). The court reasoned that under N.J.S.A. 2A:156A-21's plain language, "[t]he

only appropriate remedy is the suppression of those 306 calls together with the entire contents of the wiretap from" the interception of the privileged marital communication on February 27, 2015, and thereafter, "including all evidence derived therefrom."

We granted the State's motion for leave to appeal. The State presents the following arguments for our consideration:

> POINT I
>
> THE AUTHORIZED INTERCEPTION OF COMMUNICATIONS BETWEEN CO-CONSPIRATOR SPOUSES WAS LAWFUL AND DID NOT JUSTIFY SUPPRESSING NEARLY THE ENTIRE WIRETAP.
>
> A. The Wiretap Suppression Hearings and [the Motion Court's] Ruling.
>
> B. Intercepting a Communication that Is Subsequently Shielded from Admission by an Evidentiary Privilege Is Not a Wiretap Act Violation.
>
> C. A Rule that Intercepting a Communication Found to Be Privileged Violates the Wiretap Act Would Be Unworkable.
>
> D. The Judge's Suppression Decision Had No Other Logical or Legally Sound Justification.

## II.

The State's appeal is founded on claims the court erred in its interpretation of the Wiretap Act. More particularly, the State challenges the

court's interpretation and application of N.J.S.A. 2A:156A-21 which in pertinent part bars the introduction in evidence of communications, and the evidence derived therefrom, that were "unlawfully intercepted" or intercepted in a manner "not in conformity with the order or authorization or in accordance with the requirements of" N.J.S.A. 2A:156A-12.

"'Questions of statutory interpretation are legal ones' that we review 'de novo, "unconstrained by deference to the decisions of the trial court . . . ."'" State v. Bernardi, 456 N.J Super. 176, 186 (App. Div. 2018) (quoting State v. S.B., 230 N.J. 62, 67 (2017)). We also review de novo a trial court's application of the law to undisputed facts. State v. Hagans, 233 N.J. 30, 37-38 (2018).

Our interpretation of the Wiretap Act, and more particularly N.J.S.A. 2A:156A-21, is guided by well-established principles of statutory construction. Our objective in interpreting a statute "'is to effectuate legislative intent,' and '[t]he best source of direction on legislative intent is the very language used by the Legislature.'" Bozzi v. City of Jersey City, 248 N.J. 274, 283 (2021) (quoting Gilleran v. Twp. of Bloomfield, 227 N.J. 159, 171-72 (2016)); see also DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("The Legislature's intent is the paramount goal when interpreting a statute[,] and, generally, the best indicator of that intent is the statutory language."). We must also "strive[] for

an interpretation that gives effect to all the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant." In re DiGuglielmo, 252 N.J. 350, 360 (2022) (second alteration in original) (quoting Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020)).

Additionally, we "read and construe[]" the words and phrases of a statute in "their context," and "unless inconsistent with the manifest intent of the [L]egislature or . . . [a] different meaning is expressly indicated," we must give the words and phrases "their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. We do not read words and phrases "in isolation[,]" but instead "read them in context, along 'with related provisions[,] . . . to give sense to the legislation as a whole.'" State v. A.M., 252 N.J. 432, 451 (2023) (quoting DiProspero, 183 N.J. at 492).

"If the plain language" of a statute "leads to a clear and unambiguous result, then the interpretative process should end, without resort to extrinsic sources." State v. D.A., 191 N.J. 158, 164 (2007). Stated differently, "[w]hen the text of a statute is clear, the court's job is over." A.M., 252 N.J. at 451.

Our interpretation of N.J.S.A. 2A:156A-21 is also guided by principles that uniquely apply to the Wiretap Act. In 1979, our Supreme Court explained, "the Wiretap Act constitutes an 'intrusion into individual rights of privacy' and should be strictly interpreted and meticulously enforced." State v.

12

Cerbo, 78 N.J. 595, 604 (1979) (citation omitted).  More recently, the Court reiterated that "[c]ourts must strictly construe the . . . Wiretap Act to protect individual privacy rights."  Facebook, Inc. v. State, 254 N.J. 329, 350 (2023); see also State v. Worthy, 141 N.J. 368, 379 (1995) (explaining "strict interpretation and application of the" Wiretap Act is required based on "the Legislature's deep and enduring concern for the privacy rights of individuals who are affronted by the interception of telephonic communications.").

N.J.S.A. 2A:156A-21 bars admission in evidence of "the entire contents of all intercepted wire, electronic[,] or oral communications obtained during or after any interception which is determined to be in violation of" the statute's subsections (a) through (c).  N.J.S.A. 2A:156A-21.  Subsection (a) requires suppression of communications that are "unlawfully intercepted[.]"  N.J.S.A. 2A:156A-21(a).  Subsection (b) requires suppression of communications that are intercepted pursuant to an "order of authorization [that] is insufficient on its face[.]"  N.J.S.A. 2A:156A-21(b).  Subsection (c) requires suppression where "[t]he interception was not made in accordance with the order of authorization or in accordance with the requirements of" N.J.S.A. 2A:156A-12.  N.J.S.A. 2A:156A-21(c).  As noted, N.J.S.A. 2A:156A-12 sets forth the required terms on a wiretap order.

The parties do not dispute the scope of N.J.S.A. 2A:156A-21's suppression remedy. The statute plainly states that "all" intercepted communications, and evidence derived therefrom, that are obtained "during or after" an interception made in violation of subsections (a) through (c), shall not be introduced in evidence at any trial, hearing, or proceeding. N.J.S.A. 2A:156A-21. As the Court explained in Worthy, following a 1975 amendment to N.J.S.A. 2A:156A-21, "[a] plain and strict reading of the amended statute supports the proposition that all evidence derived from the illegal interception — the conversations recorded by that interception, conversations recorded after the unlawful interception, and other evidence 'derived' from the illegal interception — shall be excluded" from evidence at any trial, hearing, or proceeding prosecuted thereafter.[6]  141 N.J. at 387.

_____

[6]  Prior to the 1975 amendment, the original version of N.J.S.A. 2A:156A-21 provided in pertinent part that, if a motion to suppress evidence was granted based on a violation of subsections (a) through (c), "the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall not be received in evidence in the trial, hearing[,] or proceeding." L. 1968, c. 409, § 21, eff. Jan. 1, 1969. The 1975 amendment revised section 21 and added in part the words "entire" and "all" thus clarifying and broadening the scope of the suppression-of-evidence remedy under the statute. Under the amendment, the statute provided: "the entire contents of all intercepted wire or oral communications obtained during or after any interception which is determined to be in violation of this act under subsections a., b., or c. above, or evidence derived therefrom, shall not be received in evidence in the trial, hearing[,] or proceeding." L. 1975, c. 131, § 10, eff. June 30, 1975 (emphasis added).

The State claims the statutory bar to the introduction of intercepted communications and the evidence derived therefrom is inapplicable here because the February 27, 2015 initial interception of a privileged marital communication between Grant and Villa-Grant, and the subsequent interception of 305 additional privileged marital communications, were neither intercepted "unlawfully" in violation of subsection (a) of N.J.S.A. 2A:156A-21 nor "not made in conformity with the" wiretap orders "or in accordance with" N.J.S.A. 2A:156A-12 under subsection (c) of N.J.S.A. 2A:156A-21.[7] The State argues the trial court erred by concluding otherwise.

We agree with the State that the interception of Grant and Villa-Grant's privileged marital communications on February 27, 2015 were not per se "unlawful" under subsection (a) of N.J.S.A. 2A:156A-21. That is, the interception of a privileged electronic or wire communication alone does not require suppression of all subsequent interceptions and the evidence derived therefrom under N.J.S.A. 2A:156A-21.

---

[7] Defendants did not argue before the trial court and do not argue on appeal that interceptions and the evidence derived therefrom should be suppressed as a result of the interception of privileged marital communications based on a claim under subsection (b) of N.J.S.A. 2A:156A-21 that the wiretap order "is insufficient on its face." We therefore do not address that subsection of the statute.

15

The Wiretap Act does not define the term "unlawfully intercepted" in subsection (a) of N.J.S.A. 2A:156A-21. In State v. Novembrino, the Court suggested "unlawfully intercepted" under subsection (a) means "unauthorized or inconsistent with the statute[.]" 105 N.J. 95, 149 (1987). The "generally accepted meaning[s]" of "unlawful" and "unlawfully," "according to the approved usage of the language[,]" N.J.S.A. 1:1-1, include "[n]ot authorized by law; illegal[,]" Black's Law Dictionary 1850 (11th ed. 2019); "[c]riminally punishable[,]" ibid.; and "not lawful[,]" Merriam-Webster's Collegiate Dictionary 1370 (11th ed. 2020).

We are not persuaded the Wiretap Act may be properly interpreted to require application of the mandatory suppression remedy in N.J.S.A. 2A:156A-21 simply because a privileged communication is intercepted. The plain language of the Wiretap Act does not support a construction that the mere interception of a privileged communication constitutes an "unlawfully intercepted" communication under N.J.S.A. 2A:156A-21(a).

The Wiretap Act does not expressly state that interception of privileged communications is either unlawful or requires the suppression remedy under N.J.S.A. 2A:156A-21. And the Wiretap Act includes a provision, N.J.S.A. 2A:156A-11, expressly addressing the interception of privileged communications, but it does not state or suggest that interception of a

16                                                              A-1230-22

privileged communication is prohibited or is otherwise unlawful under the Wiretap Act.

To the contrary, N.J.S.A. 2A:156A-11 prescribes a procedure for obtaining a wiretap order for interception of communications from facilities — including phones — subscribed to individuals, including attorneys-at-law, licensed physicians, licensed practicing psychologists, practicing clergy, newspaper persons, and in "place[s] used primarily for habitation by" a married couple. Thus, the Legislature made express and special provision for the interception of communications that could reasonably be expected to include privileged communications, N.J.S.A. 2A:156A-11 but the statute does not prohibit the interception of such privileged communications or declare such interceptions unlawful.

Moreover, N.J.S.A. 2A:156A-11 makes further provision for the interception of privileged communications. The statute includes an express acknowledgement that interceptions of privileged communications are within the contemplation of the Wiretap Act. N.J.S.A. 2A:156A-11 provides that "[n]o otherwise privileged wire, electronic[,] or oral communication intercepted <u>in accordance with</u>, or in violation of, <u>the provisions of [the Wiretap Act]</u>, shall lose its privileged character." (emphasis added). Stated differently, the plain language of N.J.S.A. 2A:156A-11 includes a Legislative

declaration that privileged communications may be intercepted "in accordance with" the requirements of the Wiretap Act. That declaration cannot be logically reconciled with an interpretation of N.J.S.A. 2A:156A-21 that renders every interception of a privileged communication unlawful under subsection (a), triggering the statute's suppression-of-evidence remedy. We may not read the statute to lead to such an incongruous interpretation. See New Capitol Bar & Grill Corp. v. Div. of Emp. Sec., Dep't of Lab. and Indus., 25 N.J. 155, 160 (1957) (citing Giordano v. City Comm'n of City of Newark, 2 N.J. 585, 594 (1949)) ("It is elementary that a statute should be construed to avoid absurd results.").

Our determination that the mere interception of a privileged communication is not unlawful under N.J.S.A. 2A:156A-21(a) is further supported by the Wiretap Act's legislative history. As the Court explained in State v. Terry, the Wiretap Act was modeled on a statute prepared by University of Notre Dame Law School Professor G. Robert Blakey that was included and explained in a 1968 article published in the Notre Dame Law Review. 218 N.J. 224, 236 (2014). The Court in Terry relied on Blakey's article and testimony before the Legislature in support of the adoption of the Wiretap Act as an aid in interpreting N.J.S.A. 2A:156A-21. Ibid.

18

Pertinent here, Blakey's law review article addresses the language our Legislature adopted in N.J.S.A. 2A:156A-11 and explains the statute "should serve to guarantee that the incidental interception of otherwise privileged communications will be held to a minimum." G. Robert Blakey & James A. Hancock, A Proposed Electronic Surveillance Control Act, 43 Notre Dame L. Rev. 657, 675 n. 38 (1968). Thus, the authors of the article that provided the framework, and indeed the language, for much of our Wiretap Act, including N.J.S.A. 2A:156A-11, recognized the statute did not render the mere interception of a privileged communication an unlawful or unauthorized interception. Professor Blakey explained incidental interceptions of privileged communications would occur under the Wiretap Act; their interception should be kept to a minimum; and their interception would not result in a loss of the communications' privileged character. Professor Blakey's explanation of N.J.S.A. 2A:156A-11 supports our conclusion the mere interception of a privileged communication is not unlawful under the Wiretap Act and does not constitute an "unlawfully intercepted" communication under N.J.S.A. 2A:156A-21.

Our interpretation of the statute is also supported by simple logic applied to the manner in which a wiretap order is executed. For example, where, as here, the State's application for the wiretap order asserted Grant used a phone

subscribed to his wife, Villa-Grant, the State and the court would have been aware Grant was married to Villa-Grant. However, in the execution of the wiretap order, the only way to determine if communications to and from that phone were privileged was for the State Police to first monitor a call to determine if Grant and Villa-Grant were parties to the call.

Indeed, even if a wiretap order authorized interceptions from a phone subscribed to Grant and another subscribed to Villa-Grant, it would not be possible to determine if calls made between the two phones constituted privileged marital communications under the then-extant version of N.J.R.E. 509 unless officers first determined — by monitoring the calls — whether spouses Grant and Villa-Grant were the parties to the communications. Were the rule otherwise, clever criminals would only use phones subscribed to by married couples. The Legislature could not have intended interception under the Wiretap Act to be so easily evaded.

Of course, if the officers monitored the communications and determined spouses Grant and Villa-Grant were parties to a call, by definition under the then-extant version of N.J.R.E. 509 the officers would have intercepted a privileged marital communications call, and, under defendants' interpretation of N.J.S.A. 2A:156A-21, the interception would be unlawful. Further, under N.J.S.A. 2A:156A-21, all future intercepted communications — including non-

privileged communications — and the evidence derived therefrom, would then be subject to the mandatory suppression-of-evidence remedy. We find such an interpretation is simply not supported by any language in the Wiretap Act.

That is not to say there are no interceptions of privileged communications that are unlawful under N.J.S.A. 2A:156A-21(a), thereby triggering the suppression-of-evidence remedy. Indeed, N.J.S.A. 2A:156A-11 expressly recognizes both that interceptions of privileged communications may be "in accordance with the" Wiretap Act or "in violation of" the Wiretap Act. As such, the Wiretap Act recognizes there are interceptions falling in the latter category that are unlawful and trigger the suppression remedy under N.J.S.A. 2A:156A-21.

The distinction between interceptions of privileged communications that are in accordance with the Wiretap Act and not unlawful under N.J.S.A. 2A:156A-21(a), and those that are unlawful, rests on the State's fulfillment of its "strict" statutory obligation "to minimize or eliminate the interception of . . . communications not otherwise subject to interception." Facebook, Inc., 254 N.J. at 349 (quoting N.J.S.A. 2A:156A-12(f)). That obligation "is accomplished through 'extrinsic' and 'intrinsic' minimization." Ibid. (quoting State v. Catania, 85 N.J. 418, 429 (1981), abrogated on other grounds, State v. Purnell, 161 N.J. 44 (1999)).

Minimization is an affirmative obligation under the Wiretap Act and is rooted in the Fourth Amendment's protection of individual privacy against unreasonable searches. See Catania, 85 N.J. at 429, 437. Under every wiretap order, law enforcement officers have a duty to "minimize the interception of privileged communications." Facebook, Inc., 254 N.J. at 349; see also N.J.S.A. 2A:156A-12(f) (providing in part every wiretap order "shall require that such interception . . . be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under" the Wiretap Act). Here, the February and March 2015 wiretap orders expressly provided that they "be conducted in a way as to minimize or eliminate the interception of communications other than the type described herein . . . ."

We reject the State's suggestion that N.J.S.A. 2A:156A-12's minimization requirements are mere "guidelines." "Law enforcement officers must . . . minimize the interception of privileged communications[,]" Facebook, Inc., 254 N.J. at 349, including privileged marital communications, Terry, 218 N.J. at 245.

Determining whether an interception otherwise authorized by the wiretap orders constitutes privileged marital communications necessarily requires that the officers engage in intrinsic minimization, which mandates an analysis of

22

the communications "on a call-by-call basis . . . ." Facebook, Inc., 254 N.J. at 349 (quoting Catania, 85 N.J. at 430). Therefore, the officers were permitted to intercept and monitor the calls in the first instance, but the monitoring should have "cease[d] immediately" "once the parties [had] been identified and the conversation[s] between them [were] determined to be nonpertinent or privileged." Ibid. (quoting United States v. DePalma, 461 F. Supp. 800, 821 (S.D.N.Y. 1978)). That is not what the State Police did here.

In our view, the monitoring of a communication as part of the mandatory intrinsic minimization process required to determine if a communication is privileged constitutes an incidental, authorized, and lawful interception under the Wiretap Act. Cf. Catania, 85 N.J. at 430-31 (quoting State v. Molinaro, 117 N.J. Super. 276, 285 (Law Div. 1971), rev'd on other grounds, 122 N.J. Super. 181 (App. Div. 1973)) (recognizing "the interception of nonsubject communications require[s] minimization to be conducted on an intrinsic, call-by-call basis" in order to avoid "violat[ing] the command of the statute"). Doing so therefore does not trigger the suppression-of-evidence remedy under N.J.S.A. 2A:156A-21. Indeed, intrinsic minimization to determine if a communication is privileged could not logically be deemed unlawful or unauthorized because such minimization is mandated by N.J.S.A. 2A:156A-

23

12(f) and was required by the wiretap orders pursuant to which the challenged interceptions here were obtained by the State Police.

We are not persuaded our interpretation of N.J.S.A. 2A:156A-21 is inconsistent with Court's statement in Terry that, under N.J.S.A. 2A:156A-11, "conversations between spouses that would otherwise be privileged cannot be intercepted or introduced in evidence under current law." 218 N.J. at 229. Defendants argue the Court's statement is a binding conclusion of law that any wiretap interception of a privileged marital communication is unlawful under N.J.S.A. 2A:156A-21(a) and therefore triggers the broad suppression-of-evidence remedy. We disagree.

The Court in Terry did not consider or address the application of N.J.S.A. 2A:156A-21 to marital communications intercepted without minimization, which is the issue here. Instead, the Court in Terry addressed only the admissibility of intercepted marital communications under N.J.R.E. 509 and N.J.S.A. 2A:156A-21. 218 N.J. at 234-41. For that reason alone, we reject defendants' claim the Court's statement should be interpreted as a binding declaration that privileged communications intercepted and monitored for the purposes of intrinsic minimization constitute "unlawfully intercepted" communications under N.J.S.A. 2A:156A-21(a).

Additionally, the Court's declaration that privileged communications should not be intercepted is consistent with our interpretation of the Wiretap Act. We agree privileged communications should not be intercepted, but we recognize privileged communications may be properly intercepted during the required intrinsic minimization monitoring process to determine if, in fact, communications are privileged, and that such incidental interceptions are not unlawful under N.J.S.A. 2A:156A-21(a), so long as the intrinsic minimization process immediately terminates when a communication is determined to be privileged. Facebook, Inc., 254 N.J. at 349. The Court in Terry explained it did not address "whether interception of spousal communications violates the minimization requirements of the Wiretap Act." 218 N.J. at 246. Thus, we discern no basis to conclude the Court's statement that privileged communications should not be intercepted is inconsistent with our interpretation of N.J.S.A. 2A:156A-21.

Our interpretation of the statute does not provide any refuge for the State's actions here. The undisputed facts establish the State failed to take any action to minimize the interceptions in a manner limited to determining whether any of the 306 communications between Grant and Villa-Grant constituted privileged marital communications. The State does not dispute that it knew Grant and Villa-Grant were married. The initial wiretap applications

25

made clear the State knew they were married; the–applications noted Grant used a phone subscribed to his "wife" Villa-Grant to allegedly commit offenses. Additionally, the State does not dispute that, as it monitored the communications between Grant and Villa-Grant, beginning with the first call on February 27, 2015, and continuing through April 16, 2015, it knew those communications were between the two spouses.

The State argues it properly intercepted and monitored the calls in good faith because it believed the crime-fraud exception suggested by the Court in Terry, that was later adopted in November 2015 as an amendment to N.J.R.E. 509, would apply retroactively. In taking that position, the State concedes it did not engage in the required minimization because it contends it was entitled to intercept the 306 communications under the putative crime-fraud exception which, as it turns out, is wholly inapplicable because the exception was adopted after the interceptions took place and is not retroactive. See Bailey, 251 N.J. at 127. The State is governed by the law as it stood when the State Police intercepted the communications – not by its forecast of what the law might be in the future.

### III.

Under these circumstances, we are convinced the interceptions of the 306 privileged marital communications were unlawful as violative of the

Wiretap Act's minimization requirement.  <u>Facebook, Inc.</u>, 254 N.J. at 349.  For the same reason, we also conclude interception of the communications violated the wiretap orders, each of which required minimization to avoid interception of privileged communications not otherwise authorized under the Wiretap Act. The State's interception of Grant and Villa-Grant's marital communications therefore violated subsections (a) and (c) of N.J.S.A. 2A:156A-21 and thus require application of the mandatory suppression-of-evidence remedy under the statute.  "The strict interpretation accorded the . . . Wiretap Act . . . , the interests in privacy protected by the . . . Wiretap Act, the legislative intent to strengthen the suppression remedy, and the plain meaning of the statutory language demand that the exclusionary remedy here be strictly applied." <u>Worthy</u>, 141 N.J. at 384.

That the State Police officers monitoring the communications held a "good-faith belief" the crime-fraud exception "would apply" to their interception of Grant's and Villa-Grant's communications does not undermine our determination the interceptions were unlawful within the meaning of N.J.S.A. 2A:156A-21(a) and violated the wiretap orders under N.J.S.A. 2A:156A-21(c), such that the suppression-of-evidence remedy is required.  A good-faith interception under the Wiretap Act saves only the wiretap monitors from liability under N.J.S.A. 2A:156A-25; it does not rescue the State from

suffering the deterrent effect of exclusion under N.J.S.A. 2A:156A-21. <u>See</u> <u>Novembrino</u>, 105 N.J. at 149.

To the extent we have not directly addressed any of the State's remaining arguments, it is because they are without sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION